**BUDD COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (SETTEMBRI-
NI), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 11, 2001.
Decided May 24, 2002.

R.D. Harburg, Philadelphia, for petition-
er.

Joseph J. Schafle, Jr., Philadelphia, for
respondent.

Before McGINLEY, Judge, and
LEADBETTER, Judge, and
JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

In this appeal, we must determine
whether an agreement between an employ-
er and its employee regarding settlement
of employer's subrogation lien from the
employee's third-party recovery violates
Section 407 of the Workers' Compensation

Act (Act),[1] which prohibits agreements varying the amount of compensation to be paid or the length of time over which compensation is payable.

In 1985, claimant Antonio Settembrini, sustained a work-related injury to his foot, which resulted in the payment of workers' compensation benefits pursuant to a notice of compensation payable. As a result of his injury, claimant pursued a civil action against Conrail. That action was settled in January of 1991 for $200,000. In pursuing that civil action, claimant incurred costs of $15,339.17, and attorney fees of $61,553.61, which constituted 38.4% of the settlement. As of the time of the settlement, claimant's employer, The Budd Company, had paid claimant $171,610.64 in workers' compensation benefits. Subsequently, claimant, claimant's attorney and employer's attorney, signed a form captioned "Receipt Covering Net Amount Recovered in Third Party Settlement (agreement)," addressing employer's subrogation lien. Although it is not clear from the agreement, employer received $75,000 from the settlement proceeds in partial payment of its accrued lien and claimant received $48,107.25. In addition, the agreement provided that $115,000 would be treated as an advance payment of compensation and as a result thereof, no further compensation payments were due until April 18, 1998. Finally, the agreement provided that during the period of credit, employer was responsible for "38.4% of disability benefits otherwise due (presently 38.4% of $306 per week or $117.50 per week)."

In 1996, claimant filed a review petition, alleging that the credit period set forth in the agreement was contrary to the Act and should be revised accordingly. The parties proceeded with a stipulation of facts, which provided, in pertinent part:

As is set forth in the [agreement], executed by the parties and attached hereto, in order to facilitate employee's desire to accept said settlement with third party Defendant, it was agreed that employer's subrogation interest under Section 319 of the [Act] would be accounted for by agreed net return (after deduction for proportionate fee and costs) in the amount of $75,000 for compensation benefits paid; and an agreed credit of $115,000.00 to be applied against further/future disability benefits, with such credit subject to employer's responsibility for return payment of 38.4% of any additional disability benefits otherwise due. And as further set forth in that agreement, employer to remain responsible for all reasonable and necessary statutory medical expenses.

*See* Stipulation of Facts, paragraph 5. In addition to the provisions mentioned above, the agreement also stated in pertinent part:

[Claimant] understands and agrees that there has been a compromise disposition of common law action against third party responsible for employee's injury of 10/8/85 with employer's subrogation interest to be accounted for by agreed net return of workmen's compensation benefits paid after deduction for proportionate fee and costs, and agreed credit against further/future disability benefits due in order to facilitate employee's desire to effect instant settlement with third party defendant, and therefore, *without waiver of any such subrogation interest or right of employer,* pursuant to distribution in common law civil action against Consolidated Rail Corp., $115,000 of the said sum shall be treated as an advance payment of compensation . . .

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 731.

. . . .

| | |
|---|---|
| Amount of this payment— | $115,000.00 |
| Amount of previous payments— | $108,601.71 as of 1/27/91 |
| Total payments to date— | $223,601.71 plus $ 63,002.93 medical |

(Emphasis added). Based upon the stipulation and agreement, the Workers' Compensation Judge (WCJ) concluded that:

The third party settlement receipt is in error as it awards Employer a net return in the amount of $75,000.00 for compensation paid, plus a credit of $115,000.00 to be applied against future benefit payments. This amounts to $190,000.00, whereas Employer only paid $171,604.64 in benefits and medical expenses as of January 27, 1991. Therefore, this credit violates the provisions of the [Act].

. . . .

Claimant received $48,107.25 by virtue of the third party settlement receipt. This is the appropriate amount of credit to be applied against future benefit payments. A credit for this amount would extend over 157 weeks. Each week during this period Employer shall pay Claimant $117.50, representing its proportional share of costs and counsel fees.

*Settembrini v. The Budd Co.,* slip op. at 4 (WCJ's Decision and order, filed May 3, 1996). Consequently, the WCJ amended the agreement to reflect a credit to employer of $48,107.25. Employer appealed and the Workers' Compensation Appeal Board (Board) reversed.

The Board first concluded that employer agreed to accept $75,000.00 in total payment of its lien. The Board then used the "gross method" to calculate employer's grace period, arriving at a grace period of 93 weeks, which was substantially less than the 376-week grace period provided

for in the agreement. As a result, the Board concluded that the agreement violated Section 407 of the Act because it altered the amount of compensation due claimant as well as the period during which compensation should be paid. Consequently, the Board remanded the matter to the WCJ to determine the amount claimant had received and the amount still due and owing, if any. This appeal followed.

On appeal, employer argues that the agreement is valid because it does not alter claimant's compensation rate or the period of payment. Employer also notes that it did not waive any portion of its subrogation lien; rather, it agreed to accept a smaller payment on its lien upfront in connection with a longer grace period in order to accommodate claimant's request to receive a larger sum of money immediately.

Pursuant to Section 319 of the Act, 77 P.S. § 671, where the compensable injury is caused in whole or in part by a third party, the employer who has paid compensation benefits to the injured employee is subrogated to the right of the employee against the third-party tortfeasor. Where suit is brought and a recovery obtained against the tortfeasor, the employer has a past due lien against that recovery in the amount of the past benefits paid. Employer has an absolute right to immediate payment of this past-due lien from the recovery fund after payment of attorneys' fees and litigation expenses.[2] *Thompson v. Workers' Comp. Appeal Bd. (USF & G Co.),* 566 Pa. 420, 781 A.2d 1146 (2001); *Rollins Outdoor Advertising v. Workmen's Comp. Appeal Bd. (Maas),* 506 Pa. 592, 487 A.2d 794 (1985). To the extent the recovery exceeds the past due lien and

2. These costs of recovery must be paid first. *Pennsylvania Mfrs. Ass'n Ins. Co. v. Wolfe,* 534 Pa. 68, 626 A.2d 522 (1993).

litigation costs, the balance is paid to claimant and employer retains a lien against this payment for reimbursement of future compensation benefits which may become payable.

■ It is now well settled that the "gross method" is the accepted means of calculating payments pursuant to employer's subrogation interest. *P & R Welding & Fabricating v. Workmen's Comp. Appeal Bd. (Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997). *See also* 34 Pa.Code § 121.18; *Emanuel v. Workmen's Comp. Appeal Bd. (Coco Bros., Inc.)*, 692 A.2d 1182 (Pa. Cmwlth.1997). Under the gross method, after deducting the attorney's fees and expenses of litigation (collectively, "costs"), employer's lien is satisfied by payment of the lien amount minus the proportionate share of costs attributable to the lien.[3] Whatever remains of the recovery fund is paid to claimant. For purposes of gross method computation, employer is considered to have been paid, in satisfaction of its lien, both the cash it actually received and the proportionate share of costs it constructively paid. Similarly, claimant is considered to have been paid both the cash actually received and the share of costs attributable to that payment. This total amount attributed to claimant is known as the "balance of recovery." If, by the time the tort recovery is obtained the claimant is no longer disabled, each side will have obtained what it is due and will have paid its proportionate share of costs. Where claimant has not fully recovered, however, the employer retains a contingent subrogation interest in the balance of recovery paid to claimant, and receives a credit in this amount toward future compensation benefits to the extent they become payable. Employer is excused from paying future benefits until this credit is exhausted.

This period of time, measured in weeks, is computed by dividing the credit by the weekly compensation benefit amount. The result is known as the "grace period." Since the balance of recovery attributed to claimant included claimant's proportionate share of the litigation costs, during each week of the grace period employer must repay the claimant for the litigation costs attributable to the compensation benefit it is excused from paying.

This method provides a fair and efficient means to satisfy all of the competing interests of employers, claimants and their counsel. Difficulties arise, however, when parties attempt to alter the components of this scheme. Agreements between employers and employees regarding the recoupment or payment of employer's subrogation lien are null and void if they "vary the amount to be paid or period during which compensation shall be payable." Section 407 of the Act, 77 P.S. § 731. Thus, in *Rollins Outdoor Advertising*, our Supreme Court held an agreement null and void where employer waived a portion of its subrogation lien in return for the employee's promise to forego his right to future compensation. 506 Pa. at 597, 487 A.2d at 796. On the other hand, this court has approved an agreement by the employer to waive a portion of its accrued lien where the employee does not compromise

---

3. In traditional gross method computation, the proportionate share of costs attributed to the lien is calculated by dividing the lien amount by the total recovery then multiplying this fraction by the total amount of costs. The same result may be reached by dividing the cost amount by the total recovery and then multiplying this fraction by the amount of the past-due lien. The latter approach provides an added measure of flexibility where the calculation becomes more complicated, such as where the tort suit is resolved by a structured settlement rather than a lump sum payment. *See Allegheny Beverage Corp. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762 (1994).

his or her right to be paid the proper rate of compensation during the entire period of disability. *See Dasconio v. Workmen's Comp. Appeal Bd. (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989).

In *Dasconio*, the parties agreed that employer would accept a lower figure in full satisfaction of its past due lien. The agreement did not address, however, whether the employer was also waiving its *future* subrogation interest in the difference between the lien amount and the amount employer accepted. On appeal, this court construed the agreement to include such a waiver because:

> The agreement between the claimant and the insurer speaks of *waiver* of subrogation rights with respect to a portion of the accrued lien; in the event of a settlement such as did occur, the agreement describes the insurer as getting $32,186 as the reimbursement for its lien interest (of $120,203), with no mention of increasing the future credit.... There would be no real waiver if the insurer ultimately received by way of additional future credit the $88,017 sum it had waived as to the past lien reimbursement.

*Id.* at 97–98 (emphasis in original). The Board similarly construed the agreement in the present case. However, contrary to the Board's finding, the record here does not support the conclusion that employer agreed to waive a portion of its lien. In fact, the agreement specifically provides to the contrary. Here the parties explicitly agreed that employer would waive only its right to an immediate lump sum payment of part of its lien.

We do not read either *Rollins* or *Dasconio* to hold that an employer is prohibited from voluntarily foregoing immediate payment of its past due subrogation lien *so long as the future credit upon which the grace period is computed does not exceed the actual balance of recovery to claimant.* We need not reach that issue, however, because the credit agreed to by the parties far exceeds the balance of recovery to claimant. Employer agreed to accept an initial net payment after deduction of its proportional share of costs in the amount of $75,000.00. By adding back employer's pro rata share of fees and expenses, we can determine that the total amount paid in satisfaction of employer's past due lien was $121,845.00. This left a balance of recovery of $78,155.00 ($200,000.00–$121,845.00), whereas the parties agreed to a credit of $115,000.00. Thus, if the agreement were enforced, employer would receive a longer grace period (by 120.4 weeks [4]) than that to which it would be entitled based upon the distribution at the time of settlement. Consequently, claimant would receive less compensation (by $36,845.00 [5]) than that to which he is entitled, assuming that he remains disabled. Thus, the Board was correct that since the agreement varies the amount of compensation payable, it is wholly null, void and unenforceable. As *Rollins* makes clear, such an illegal agreement cannot be salvaged—as the WCJ attempted [6] to do in

---

4. This is the difference between $115,000.00 and $78,155.00 divided by $306.00. We note that employer has not offered any explanation regarding how it determined that a future credit of $115,000.00 was warranted.

5. This was arrived at by multiplying claimant's compensation rate by 120.4 weeks, the extra grace period afforded to employer under the agreement.

6. It should be noted that, in addition to attempting to cure an agreement which ought to have been declared null and void, the WCJ erred in his calculations by measuring the grace period credit by only the cash payment to claimant rather than the total balance of recovery.

this case—by simply adjusting the grace period. Instead, the parties must be "returned to their positions before the agreement ever existed, and [employer is] entitled to subrogation of the entire amount of benefits [it] paid prior to the third party settlement." *Rollins,* 506 Pa. at 599, 487 A.2d at 797.

The Board in its order, however, adjusted only the grace period to that which it would have been absent the agreement,[7] and failed to order that employer be given subrogation in the full amount of its lien for benefits paid prior to the settlement. Accordingly, the order of the Board is vacated, and the matter is remanded for further calculations consistent with this opinion, and taking into account the distributions and payments which have been made to date.

### ORDER

AND NOW, this 24th day of May, 2002, the order of the Workers' Compensation Appeal Board in the above captioned matter is VACATED, and the matter is REMANDED for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

---

7. The Board correctly found a balance of recovery to claimant of $28,395.36 by subtracting the past due lien of $171,604.64 from the $200,000.00 recovery. This results in a grace period of 93 weeks ($28,395.36 divided by $306.00 per week), during which employer reimburses claimant on a weekly basis for the costs paid by claimant at the time of settlement.