**Donna KIDD–PARKER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA SCHOOL DISTRICT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 3, 2006.

Decided April 25, 2006.

Publication Ordered Sept. 6, 2006.

Thomas Bruno, II, Philadelphia, for petitioner.

Dylan T. Tester, Paoli, for respondent, School District of Philadelphia.

Eric G. Preputnick, Asst. Counsel and Thomas J. Kuzma, Deputy Chief Counsel, Harrisburg, for intervenor, Bureau of Workers' Compensation, Supersedeas Fund.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

**1.** Claimant executed a general release agreeing to accept $184,755 as full settlement of her action against the third-party tortfeasor, Overbrook School for the Blind. Claimant received payment on November 22, 1999. Reproduced Record at 64a–68a (R.R. ——);

OPINION BY Judge LEAVITT.

Donna Kidd–Parker (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting the Philadelphia School District (Employer) subrogation against Claimant's recovery from the third party tortfeasor responsible for her work-related injury. In doing so, the Board affirmed the decision of a Workers' Compensation Judge (WCJ) that Employer was entitled to subrogation even though it had already recovered a substantial portion of what it had paid Claimant for her injury from the Supersedeas Fund. Finding no merit to Claimant's position that Employer's subrogation right was limited to the amount not recovered from the Supersedeas Fund, we affirm.

On May 6, 1996, Claimant sustained a work injury, which Employer recognized as compensable, and she began receiving workers' compensation benefits. On April 28, 1997, Employer filed a termination petition, asserting that Claimant had fully recovered from her work-related injury. It also requested a supersedeas, which was denied. On October 7, 1999, the WCJ terminated Claimant's benefits effective April 8, 1997, and Claimant appealed. On November 22, 1999, Claimant settled her claim against the third-party tortfeasor responsible for her work-related injury and received $184,775.[1] Claimant's appeal was completed on August 23, 2001, when this Court affirmed the termination of her benefits.

On February 11, 2002, Employer applied to the Supersedeas Fund for reimbursement of benefits paid to Claimant that were found not to be owed.[2] Employer

WCJ Decision, October 19, 2004, at Findings of Fact 3 (F.F. ——).

**2.** The Supersedeas Fund is governed by the Bureau of Workers' Compensation (Bureau), of the Department of Labor & Industry.

requested $67,154.86 for reimbursement of indemnity benefits ($527 per week for 127.43 weeks) and $26,414.29 for reimbursement of medical expenses. The Supersedeas Fund granted the application and reimbursed Employer $93,870.29. Employer did not advise the Supersedeas Fund that Claimant had settled with the tortfeasor responsible for the injury.[3]

On November 13, 2002, Employer filed a petition to modify benefits, asserting a subrogation lien under Section 319 of the Workers' Compensation Act (Act).[4] In its petition, Employer noted that it had received $93,870.29 from the Supersedeas Fund. Claimant agreed that Employer had a right to subrogation but disagreed as to the amount. When the Bureau became aware of Employer's subrogation request, it submitted a letter brief to the WCJ asserting its right, as conservator of the Supersedeas Fund, to recoup monies collected by Employer from the tort recovery.

A hearing was held before the WCJ at which exhibits, briefs and other documents were received into evidence. Claimant took the position that only benefits paid prior to April 8, 1997, i.e., the date of termination, were subject to subrogation since Employer had been reimbursed for all payments made after the date its supersedeas request was denied. Claimant argued that Employer's lien totaled $19,141.82. Employer, in contrast, sought $93,569.15, which included $19,141.82, the amount paid to Claimant from the date of injury to the date of her recovery, and $54,725.88, the amount owed to the Supersedeas Fund.[5]

The WCJ determined that Employer established a right to $73,868.54 from Claimant's tort recovery. Further, the WCJ held that Employer's subrogation was not affected by its recovery from the Supersedeas Fund. The WCJ directed Claimant to pay Employer $73,868.54 and directed Employer to remit $54,725.88 to the Supersedeas Fund. Claimant appealed to the Board, and it affirmed the WCJ. This appeal followed.[6]

On appeal, Claimant presents four arguments for our consideration. First, Claimant contends that the Board erred in allowing Employer a subrogation lien in excess of 48 weeks of "compensation payable," which was the amount paid to Claimant prior to the filing of the termi-

---

**3.** Claimant had advised Employer of her tort recovery in correspondence dated August 15, 2001. R.R. 58a–59a; F.F. 7.

**4.** Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 671.

**5.** Employer and the Bureau calculated slightly different lien amounts, but agreed upon the Bureau's figures. F.F. 11, 12. The calculations require prorating the costs of recovery in the third-party litigation, including attorney fees and costs, to arrive at the net amount. $93,569.15 is the net amount of $126,707.71 paid to Claimant in workers' compensation benefits. 77 P.S. § 671; F.F. 2; R.R. 89a. See P & R Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola), 549 Pa. 490, 701 A.2d 560 (1997) (gross method appropriate for determining employer's subrogation rights to settlement of

third-party tort action); and Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board, 506 Pa. 592, 487 A.2d 794 (1985) (net method appropriate to avoid further reimbursement of costs from future weekly benefits).

**6.** This Court's review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed, a practice or procedure of the Board was not followed and whether the findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Gunter v. Workmen's Compensation Appeal Board (City of Philadelphia), 573 Pa. 386, 391, 825 A.2d 1236, 1239 (2003).

nation petition. Second, Claimant contends that Employer is collaterally estopped from enforcing a subrogation lien where it has already been made whole by the Supersedeas Fund. Third, Claimant contends that because her work-related wage loss was limited to 48 weeks by the WCJ, that must be the limit to Employer's subrogation lien. Fourth, Claimant contends that the Board has, in effect, created a right of subrogation in the Supersedeas Fund, even though the Act grants only employers and insurers a right of subrogation.

The Supersedeas Fund is governed by Section 443(a) of the Act, and Employer's right to subrogation is governed by Section 319 of the Act. Before addressing Claimant's specific arguments, we begin with a review of both statutory provisions.

■■■■ Section 319 of the Act authorizes an employer to be reimbursed for compensation benefits paid to an injured employee from the award of damages recovered by that employee from a third party for the work-related injury. Section 319 provides in relevant part as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, *the employer shall be subrogated* to the right of the employe, his personal representative, his estate or his dependents, against such third party *to the extent of the compensation payable under this article by the employer;* reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in

effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the *amount of compensation paid or payable* at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the *compensation* theretofore *paid by the employer* shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671 (emphasis added). The purpose of this subrogation is threefold: it prevents double recovery for the same injury; it relieves the employer of liability occasioned by the negligence of a third party; and it prevents a third party from escaping liability for his negligence. *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980). Section 319 is clear and unambiguous; is written in mandatory terms; and admits no exceptions, equitable or otherwise. *Thompson v. Workers' Compensation Appeal Board (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146 (2001). The employer's right to subrogation under Section 319 is automatic, and it is absolute. *Winfree v. Philadelphia Electric Co.*, 520 Pa. 392, 554 A.2d 485 (1989).

On the other hand, Section 443 [7] of the Act creates a "special fund ... known as

---

7. Section 443 provides in pertinent part:

(a) If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor. Application for reimbursement shall be made to the department on forms prescribed by the department and furnished by the insurer. Applications may be assigned to a workmen's compensation referee for a hearing and determination of

the Workmen's Compensation Supersedeas Fund" to reimburse an employer who has been ordered to pay workers' compensation benefits that are later determined not to be owed. 77 P.S. § 999(b). In enacting Section 443, "[t]he Legislature has recognized that recoupment from the claimant was impractical and would undermine the benevolent purposes of the Act." *Rogers v. Workmen's Compensation Appeal Board (Strouse/Greenberg & Co.)*, 129 Pa. Cmwlth.230, 565 A.2d 209, 211 (1989) (citations omitted). The Supersedeas Fund injects fairness into a system that requires an employer to pay disputed benefits while they are appealed.[8]

With this background, we turn to Claimant's first issue. Claimant seeks to limit Employer's subrogation recovery to 48 weeks of disability payments that were made prior to the termination of her benefits. Claimant notes that Section 319 provides that "the employer shall be subrogated to the right of the employe ... against such third party to the extent of the *compensation payable*." 77 P.S. § 671. Claimant reads this language as a mandate limiting Employer's subrogation lien to the amount of benefits found "payable" by the

WCJ. By the time Claimant's benefits were terminated on October 7, 1999, Employer had already paid $126,707.71 in indemnity and medical benefits to Claimant; this included 126 weeks of benefits after the effective date of termination of April 8, 1997. Claimant asserts that the effect of the WCJ's termination decision was that $19,142.66, which is what was paid pre-termination, is the only amount "payable," as that term is used in Section 319. Accordingly, only that amount is subject to Employer's right of subrogation.

■ We find no merit to Claimant's argument. Claimant cites no authority for her understanding of "compensation payable," a term not defined in the Act or in the regulations.[9] Further, it is not consistent with the entire sentence which is "compensation payable *under this article* by employer...." 77 P.S. § 671. "Under this article," or Act, the employer must pay compensation to an injured employee, even if the employer believes it is not owed and has filed a termination petition. Unless the employer obtains a supersedeas, compensation is payable during the litigation of the termination petition. *Gillis v.*

---

eligibility for reimbursement pursuant to this act. An appeal shall lie in the manner and on the grounds provided in section 423 of this act, from any allowance or disallowance of reimbursement under this section.
(b) There is hereby established a special fund in the State Treasury, separate and apart from all other public moneys or funds of this Commonwealth to be known as the Workmen's Compensation Supersedeas Fund. The purpose of this fund shall be to provide moneys for payments pursuant to subsection (a).
77 P.S. 999(a)-(b).

8. An employer is entitled to reimbursement from the Fund only if it meets all five of the requirements specified in Section 443:
 1. A supersedeas must have been requested;

2. The request for supersedeas must have been denied;
3. The request must have been made in a proceeding under Section 413 of the Act;
4. Payments were continued because of the order denying supersedeas; and
5. In the final outcome of the proceedings, 'it is determined that such compensation was not, in fact, payable.'
*Robb, Leonard & Mulvihill v. Workers' Compensation Appeal Board (Hooper)*, 746 A.2d 1175, 1178 (Pa.Cmwlth.2000) (citations omitted).

9. Although not defined in the regulations, "compensation payable" is explained in terms of computing "the time when the disability becomes compensable" for computing the term of disability. 34 Pa.Code § 121.15(a).

*Workers' Compensation Appeal Board (Willits Roofing, Inc.),* 725 A.2d 257 (Pa. Cmwlth.1999).

■ Here, Employer paid Claimant the total amount of $126,707.71, much of it during the period that the termination petition was litigated. Having been denied a supersedeas, the burden remained on Employer to continue to pay compensation despite the fact that Claimant had, in fact, completely recovered from her injury, and despite the fact that the compensable injury was caused by the negligence of a third party.[10] All of the payments made by Employer to Claimant, both before and after the termination date, constitute "compensation payable under this article by the employer." 77 P.S. § 671. Accordingly, the Board did not err in holding that the amount subject to subrogation was the entire amount paid to Claimant by Employer.[11]

■ Claimant contends next that Employer's lien should be limited because Employer had received reimbursement from the Supersedeas Fund when it filed its petition to modify. Claimant argues that because Employer stated in its application to the Supersedeas Fund that only 48 weeks of benefits were payable to Claimant, Employer is collaterally estopped from asserting otherwise in the subrogation proceeding. Further, Claimant argues that Employer's reimbursement from the Supersedeas Fund was "in the nature of an accord and satisfaction" of Employer's subrogation rights, except for 48 weeks of disability. We cannot agree.

■ Under the doctrine of collateral estoppel, factual and legal determinations essential to a judgment will be dispositive in a subsequent proceeding on the same issues. *PMA Insurance Group v. Workmen's Compensation Appeal Board (Kelley),* 665 A.2d 538 (Pa.Cmwlth.1995). For collateral estoppel to apply here, we would have to find that the establishment of subrogation rights involves questions of fact or law that are identical to those involved in the establishment of a right to payment by the Supersedeas Fund. This finding cannot be made.

■ Under Section 443(a) of the Act, an employer will be reimbursed by the Supersedeas Fund if it can demonstrate the following: a supersedeas was requested and denied; compensation payments were continued because of the order denying supersedeas; and the claimant was determined not to be entitled to the compensation paid by the employer. Under Section 319, in contrast, an employer's subrogation lien is calculated simply by totaling all compensation paid or payable by the employer for an injury resulting from the negligence of a third party. *See A.C. and S. v. Workmen's Compensation Appeal Board (Dubil),* 151 Pa.Cmwlth.314, 616 A.2d 1085 (1992) (subrogation is based on the amount of compensation paid or payable at the time the tort claim is settled). The material facts and the ultimate legal issue involved in subrogation have

---

**10.** Section 319 expresses legislative intent to provide that "where a third person is responsible for an injury to the employee the employer, who has been subrogated to the employee's right, is substituted, not to a portion of, but to all, his rights, until he is reimbursed for whatever sums he was required to pay the employee under the Compensation Act." *Bumbarger v. Bumbarger,* 190 Pa.Super. 571, 155 A.2d 216, 218 (1959) (citations omitted).

**11.** The Supreme Court has explained Section 319 as follows:

[T]he party who caused the injury bears the full burden; the employee is 'made whole,' but does not recover more than what he requires to be made whole and the employer, innocent of negligence, in the end pays nothing.

*Bressi,* 491 Pa. at 496, 421 A.2d at 654 (citation omitted).

nothing to do with resolution of a claim to the Supersedeas Fund. Accordingly, we hold that the doctrine of collateral estoppel is not applicable.

 We also find no merit to Claimant's alternate theory, *i.e.*, that Employer's reimbursement from the Supersedeas Fund operated as an accord and satisfaction of Employer's claims against Claimant's tort recovery. "[A]s a general principle of law, the employer's subrogation rights are statutorily absolute and can be abrogated only by choice." *Winfree*, 520 Pa. at 397, 554 A.2d at 487. An employer may give up its subrogation rights. *See, e.g., Meehan v. City of Philadelphia*, 184 Pa.Super. 659, 136 A.2d 178 (1957).[12] However, an employer that does not voluntarily give up its subrogation rights is not bound by a settlement between the tortfeasor and employee that seeks to limit the employer's subrogation rights. Further, the employer cannot agree to seek recovery from the Supersedeas Fund instead of from the tortfeasor.[13]

 In *Pep Boys, Inc. v. Workers' Compensation Appeal Board (Young)*, 818 A.2d 601 (Pa.Cmwlth.2003), in order to facilitate settlement of a third-party tortfeasor action, the employer agreed to compromise its subrogation lien and then sought reimbursement from the Superse-

deas Fund for the compromised amount. This Court held that an insurer must seek subrogation for the full amount of compensation it is owed from the third-party tortfeasor. It cannot recoup the compromised amount from the Supersedeas Fund. Claimant's argument that Employer gave up its subrogation claim against the tort recovery when it filed a claim with the Supersedeas Fund is unsupportable. Neither Section 319 nor Section 443(a) established the order in which an employer will request reimbursement from the Supersedeas Fund and will enforce its subrogation rights. Under *Pep Boys, Inc.*, and *Commercial Union*, it is clear that the Supersedeas Fund does not exist to satisfy the obligation of the third-party tortfeasor.

In Claimant's third issue, she asserts that Employer's subrogation should be limited because it will not result in unjust enrichment to her. Claimant contends that she was limited to 48 weeks of lost wages as a component of her damages in the third-party action because of the WCJ's decision on the termination petition. Claimant's damages in the third-party tort action included past pain and suffering, future pain and suffering, embarrassment and humiliation, disfigurement, enjoyment of life, as well as medical expenses and lost earnings. Claimant argues that to allow

---

**12.** In *Meehan*, the employer and employee jointly brought an action against a third-party tortfeasor and jointly compromised it; employee accepted $2500 and city $500. Thereafter, the employee was awarded compensation benefits, and the employer asserted a right to subrogation under Section 319 for the $2500 employee received from the tortfeasor. The Superior Court disallowed the subrogation because the settlement with the third party tortfeasor had satisfied all existing and future subrogation claims of employer. This case is inapposite to this situation.

**13.** In *Department of Labor and Industry v. Workmen's Compensation Appeal Board (Commercial Union Insurance Co.)*, 97 Pa.Cmwlth.

520, 510 A.2d 373 (1986), insurer agreed to accept a compromised sum from the third-party recovery in exchange for claimant's agreement that he was able to return to work on a certain date, and sought reimbursement from the Supersedeas Fund for the compensation not payable under the stipulation. The Court held that the requirement in Section 443(a) that it be "determined that compensation was not, in fact, payable" does not authorize invasion of the Supersedeas Fund by agreement of the parties, "much less would it authorize the transfer of the insurer's subrogation claim against the third party tortfeasor to one against the Fund." *Id.* at 376.

Employer to subrogate in excess of the 48 weeks of disability will allow Employer to invade her damage award for losses that had many elements, not just those attributed to time off work.

The structure of a tort settlement is in the control of the claimant and the tortfeasor, and it cannot be structured to defeat employer's subrogation interest. *Thompson*, 566 Pa. at 434, 781 A.2d at 1155. It is true that if Claimant had made a full recovery in the tort action, instead of compromising her claim, she would have been entitled to the full amount of her lost wages, not just the 66–2/3% paid by employer, as well as recovery for medical expenses and amounts for pain and suffering. However, the extent of Employer's subrogation is not determined by the specific components of the damages asserted against the third party. *Anderson v. Borough of Greenville*, 442 Pa. 11, 16, 273 A.2d 512, 515 (1971). Employer's claim for subrogation cannot be modified by the claimant or the third party "arbitrarily apportioning the elements of damage for his injuries claimed by the employee against the wrongdoer." *Bumbarger v. Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216, 219 (1959). To allow Claimant to retain both compensation benefits paid by Employer to which she was not entitled because she had recovered, and the settlement she received from the tortfeasor would, in fact, result in a windfall to Claimant at the expense of the Supersedeas Fund. *See CNA Insurance Co. v. Workmen's Compensation Appeal Board (Romeo)*, 134 Pa. Cmwlth.478, 578 A.2d 1375 (1990) (insurer's subrogation claim against the third party tortfeasor cannot be transferred to the Supersedeas Fund).

Finally, we turn to Claimant's contention that the WCJ lacked statutory authority to order Employer to reimburse the Supersedeas Fund out of the recovery paid to Employer by Claimant. Claimant argues that the only recourse available to the Supersedeas Fund in this situation was not to grant Employer's application for reimbursement. We disagree.

The Supersedeas Fund tendered payment to Employer under Section 443(b) of the Act, wholly unaware of Claimant's third-party recovery or Employer's subrogation lien. The purpose of the Fund is to protect an employer from bearing the burden of paying benefits to which a claimant is not entitled. The Supersedeas Fund does not provide benefits directly to a claimant, and it does not assume financial responsibility for injury caused by a third party. 77 P.S. 999(a). The Board's adjudication is fully consonant with the purpose of the Supersedeas Fund. The Board did not create a subrogation right in the Supersedeas Fund; rather, it prevented Claimant from retaining benefits to which she was not entitled. 77 P.S. 710.

The Act allows a party or the department to institute proceedings before the WCJ to address any dispute between the parties. In its modification petition, Employer requested the WCJ to "calculate its recovery of subrogation lien in light of Supersedeas Fund Reimbursement recovery." R.R. 3a. Employer acknowledged in its request that it was not entitled to reimbursement by the Fund where a third-party settlement was available. The WCJ could not calculate the amount of Employer's subrogation lien without requiring Employer to repay disbursements from the Fund to avoid double payments. The Board correctly affirmed the WCJ in this regard.

In accordance with the foregoing, the Board is affirmed.

## ORDER

AND NOW, this 25th day of April, 2006, the order of the Workers' Compensation Appeal Board dated September 30, 2005, in the above-captioned matter is hereby affirmed.