## DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKERS' COMPENSATION, Petitioner

v.

## WORKERS' COMPENSATION APPEAL BOARD (EXCELSIOR INSURANCE), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Sept. 16, 2009.
Decided Jan. 11, 2010.

---

Janet L. Palese, Asst. Counsel, and Thomas J. Kuzma, Deputy Chief Counsel, Harrisburg, for petitioner.

John T. Huskin, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

The Department of Labor and Industry, Bureau of Workers' Compensation (Bureau) petitions for review of the order of the Workers' Compensation Appeal Board (Board), which modified and affirmed Workers' Compensation Judge James Deeley's (WCJ Deeley) decision and order granting Excelsior Insurance (Insurer) reimbursement from the Supersedeas Fund for certain payments that it made to Mark Oestereich (Claimant). The Bureau argues that Insurer is not entitled to Supersedeas Fund reimbursement, pursuant to Section 443(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 999(a),[1] for the payments that it made to Claimant because those payments were for the recovery costs associated with obtaining a third party-settlement, and were not payments of "compensation." Resolution of this matter requires this Court to consider the interplay between Section 443(a) of the Act, dealing with reimbursement from the

---

1. Section 443(a) of the Act provides, in pertinent part:

    If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor.

    77 P.S. § 999(a).

Supersedeas Fund, and Section 319 of the Act, 77 P.S. § 671,[2] dealing with subrogation. For the reasons that follow, we affirm.

On November 5, 2003, Claimant sustained a work-related injury while working for Filter Tech, Inc. (Employer). Insurer, acting on Employer's behalf, began paying Claimant wage loss benefits at the rate of $410.00 per week, as well as medical benefits, for his work-related injury.

On November 22, 2005, Insurer filed a Petition for Modification of Compensation Benefits (Modification Petition), alleging that work was available within Claimant's medical restrictions and seeking to reduce Claimant's wage loss benefits to $51.10 per week as of August 12, 2005. Upon filing its Modification Petition, Insurer also requested supersedeas, which was denied by WCJ Brian Eader (WCJ Eader) in an order dated January 17, 2006. Insurer later orally amended its Modification Petition to request a suspension of benefits as of August 12, 2005.

While Insurer's Modification Petition was pending before WCJ Eader, Claimant entered into a settlement with the third-party tortfeasor responsible for causing his work-related injury (Third–Party Settlement) through which Claimant received $310,000.00. On February 28, 2006, Claimant and Insurer entered into a Third–Party Settlement Agreement (Third–Party Agreement) to resolve the distribution of the proceeds of the Third–Party Settlement. At the time of the Third–Party Settlement, Insurer had paid Claimant benefits through February 15, 2006, and Insurer had an accrued workers' compensation lien of $120,698.48 (which represented all benefits Insurer paid to Claimant between November 5, 2003 and February 15, 2006). Pursuant to the terms of the Third–Party Agreement and Section 319 of the Act,[3] Insurer received payment of its

---

**2.** Section 319 of the Act provides, in pertinent part:

> Where the compensable injury is caused ... by ... a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671.

**3.** Under Section 319 of the Act, "where the compensable injury is caused in whole or in part by a third party, the employer who has paid compensation benefits to the injured employee is subrogated to the right of the employee against the third-party tortfeasor." *Budd Co. v. Workers' Compensation Appeal Board (Settembrini)*, 798 A.2d 866, 868 (Pa. Cmwlth.2002). If "a recovery [is] obtained against the tortfeasor, the employer has a past due lien against that recovery in the amount of the past benefits paid," and the employer "has an absolute right to immediate payment of this past-due lien from the recovery fund after payment of attorneys' fees and litigation expenses." *Id.* Moreover, "[t]o the extent the recovery exceeds the past due lien and litigation costs, the balance is paid to [the] claimant and [the] employer retains a lien against this payment for reimbursement of future compensation benefits which may become payable." *Id.* at 868–69.

The Pennsylvania Supreme Court has held that "Section 319 mandates the use of the gross method when determining an employer's subrogation rights and liabilities with respect to an employee's recovery or settlement of a third party action." *P & R Welding & Fabricating v. Workmen's Compensation Ap-*

accrued lien, minus its share of the costs of recovering the lien, from the proceeds of the Third–Party Settlement. Insurer's accrued lien amounted to approximately 39% of the total proceeds from the Third–Party Settlement, and the total expenses involved in obtaining the proceeds of the Third–Party Settlement were $124,314.23. Multiplying this amount by 39% resulted in an amount of $48,401.73, which represented the amount of the expenses attributable to the recovery of Insurer's accrued workers' compensation lien. Subtracting this amount from $120,698.48 resulted in a net workers' compensation lien recovery of $72,296.75 for Insurer.[4] Also, subtracting $120,698.48 from $310,000.00 resulted in a balance of recovery of $189,301.52 for Claimant. Because the third-party recovery exceeded the amount of Insurer's accrued workers' compensation lien and the cost of recovering that lien, Insurer was entitled to a grace period of 461.7 weeks pursuant to Section 319.[5] During this grace period, Insurer was not required to pay Claimant his full compensation rate of $410.00 per week, but was, instead, only required to pay Claimant $164.42 per week.[6] Insurer began paying Claimant $164.42 per week beginning on February 16, 2006.

On October 4, 2006, Insurer and Claimant entered into a Compromise and Release Agreement (C&R Agreement). Pursuant to the C&R Agreement, Claimant agreed to waive any entitlement to wage loss benefits or medical benefits with regard to his work injury on or after October 4, 2006 in exchange for $40,000.00. However, Insurer and Claimant agreed that the C&R Agreement did not resolve the Modification Petition pending before WCJ Eader or the issue of whether Claimant was entitled to continue receiving any workers' compensation benefits after August 12, 2005. Insurer paid Claimant through October 11, 2006. WCJ Eader approved the C&R Agreement by decision and order dated November 2, 2006.

On November 14, 2006, WCJ Eader issued a decision and order granting Em-

---

peal Board (Pergola), 549 Pa. 490, 500, 701 A.2d 560, 565 (1997). The gross method of calculation has been explained as follows:

> Under the gross method, any balance of recovery is determined by deducting the employer's accrued lien from the total recovery. When the claimant's recovery in the third-party action provides the employer with repayment of its accrued lien, the employer must reimburse the claimant for the claimant's proportionate share of the costs expended to recover that amount. The remaining legal expenses are attributable to the balance of recovery. Next, one calculates the credit or grace period due to the employer. In doing this, the balance of recovery is divided by the weekly compensation rate being paid to the employee. Finally, the expenses attributable to the balance of recovery are divided by the number of weeks in the grace period in order to determine the amount of legal expenses to be paid by the employer to the claimant in installments each week during the grace period.

Id. at 495–96, 701 A.2d at 563.

4. $120,698.48 (the amount of Insurer's accrued lien) minus $48,401.73 (the amount of expenses attributable to recovering the accrued lien) equals $72,296.75 (the net amount of the accrued lien reimbursed to Insurer from the proceeds of the Third–Party Settlement).

5. The length of the grace period was determined by dividing the balance of recovery ($189,301.52) by Claimant's weekly compensation rate ($410.00).

6. The weekly rate payable to Claimant during the grace period was calculated by dividing the recovery costs attributable to Claimant's balance of recovery ($75,912.50) by the length of the grace period (461.7 weeks). This amount essentially represents the amount of attorney's fees that would have been deducted from Claimant's balance of recovery for each week of Insurer's grace period.

ployer's Modification Petition and suspending Claimant's benefits as of August 12, 2005. Insurer subsequently filed an Application for Supersedeas Fund Reimbursement (Application). Insurer sought to recover a total of $7,606.36[7] from the Supersedeas Fund. Specifically, Insurer requested $2,016.08, which represents the unreimbursed balance of benefits paid to Claimant for the period between November 22, 2005, the date that Insurer requested supersedeas, and February 15, 2006, the last date for which Insurer had paid Claimant prior to the Third–Party Settlement. Insurer also sought $5,590.28, which represents the total of the $164.42 per week payments Insurer made to Claimant during the grace period from February 16, 2006 through October 11, 2006. The Bureau, acting as conservator of the Supersedeas Fund, contested Insurer's right to reimbursement from the Fund, and the Application was assigned to WCJ Deeley for disposition.

By decision and order dated October 31, 2007, WCJ Deeley granted Insurer's Application and awarded the full amount of the reimbursement sought. WCJ Deeley explained that Insurer's:

lien was incurred as a result of the award of benefits ... and procedural and proportionate costs in obtaining reimbursement of the lien occurred directly as a result of the award.... They are not an unrelated cost but are directly due because of the denial of supersedeas and are[,] therefore, compensable.

(WCJ Decision at 2, October 31, 2007.) In addition, WCJ Deeley noted that while Insurer benefited from the Third–Party Settlement, the Supersedeas Fund also benefited because, without the Third–Party Settlement, Insurer would have continued paying full wage loss benefits to Claimant for the period preceding the execution of the C&R Agreement, and the Fund would have had to reimburse Insurer for a greater sum of money. The Bureau appealed WCJ Deeley's decision and order to the Board.

■ On September 22, 2008, the Board issued an opinion and order modifying and affirming WCJ Deeley's grant of Insurer's Application.[8] The Board concluded that the payments for which Insurer sought reimbursement were payments of "compensation" under Section 443(a) of the Act that were continued because of the denial of Insurer's request for supersedeas, but which were ultimately determined to not, in fact, be payable. The Board, therefore, further concluded that Insurer is entitled to reimbursement for those payments from the Supersedeas Fund. The Bureau now petitions this Court for review of the Board's order.[9]

7. In its Application, Insurer initially sought to recover a total of $10,637.29; however, Insurer later reduced this amount.

8. The Board modified WCJ Deeley's decision to correct several typographical errors. The Board explained that WCJ Deeley had determined that "$2,016.08 of the requested reimbursement was for the unreimbursed balance of benefits paid for the period November 22, 2005 to February 15, 2006, while $5,597.08 represented benefits paid at the rate of $164.62 a week for the period February 16, 2006 through October 11, 2006," which amounted to "a total reimbursement of $7,613.64." (Board Op. at 3.) The Board

"modif[ied WCJ Deeley's] decision to correct the weekly reimbursement figure to $164.42; the $5,597.08 figure to $5,590.28, and correspondingly, the total reimbursement figure to $7,606.36." (Board Op. at 3 n. 1.)

9. This Court's review "is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *Sysco Food Services of Philadelphia v. Workers' Compensation Appeal Board (Sebastiano)*, 940 A.2d 1270, 1273 n. 1 (Pa.Cmwlth.2008).

Before this Court, the Bureau argues that the Board erred in affirming WCJ Deeley's grant of Insurer's Application because Insurer is not entitled to Supersedeas Fund reimbursement under Section 443(a) of the Act. Under Section 443(a), in order for an insurer to obtain reimbursement from the Supersedeas Fund, the insurer must show that:

> 1) a supersedeas was requested; 2) the request for supersedeas was denied; 3) the request was made in a proceeding under Section 413 [77. P.S. §§ 771–774.3] or Section 430 [77 P.S. § 971] of the Act; **4) payments were continued because of the order denying supersedeas; and 5) in the final outcome of the proceedings, it was determined such compensation was not, in fact, payable.**

*Mark v. Workers' Compensation Appeal Board (McCurdy)*, 894 A.2d 229, 233 (Pa. Cmwlth.2006) (en banc) (emphasis added) (footnotes omitted). Here, there is no dispute that the first three requirements set forth above were satisfied. Thus, the issue that remains is whether, because of WCJ Eader's order denying supersedeas, Insurer continued making payments of "compensation"[10] that were ultimately determined to not, in fact, be payable.

The Bureau's arguments on this issue can be summarized as follows. The payments for which Insurer is seeking reimbursement were not payments of "compensation" but, rather, were payments made for Insurer's share of the costs of recovering the proceeds of the Third–Party Settlement pursuant to Section 319 of the Act.[11] Any attorney's fees and costs

---

10. "[T]he Act does not define 'compensation.' " *Berwick Industries v. Workmen's Compensation Appeal Board (Spaid)*, 537 Pa. 326, 329, 643 A.2d 1066, 1067 (1994). That term's meaning "has, therefore, been decided on a section-by-section basis." *Id.*

11. Relying on *Pep Boys, Inc. v. Workers' Compensation Appeal Board (Young)*, 818 A.2d 601 (Pa.Cmwlth.2003), the Bureau contends that, to the extent that Insurer is asserting that the $2,016.08 amount represents an unreimbursed portion of its accrued lien, Insurer compromised that amount by failing to assert it when Insurer entered into the Third–Party Agreement and, thus, is not entitled to seek reimbursement for that amount from the Supersedeas Fund. The Bureau, therefore, asserts that the only amount at issue in this case is the $5,590.28 amount, which represents the total of the $164.42 per week payments that Insurer made to Claimant during the grace period from February 16, 2006 through October 11, 2006.

We disagree. In *Young*, the insurer voluntarily agreed to compromise its subrogation lien and accept less money than it was entitled to receive in order "to facilitate the settlement of [a] third-party action." *Id.* at 603. The insurer subsequently sought to recover the compromised amount from the Supersedeas Fund. *Id.* In resolving the issue before it, this Court examined the language in Section

319, which provides: "Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer." 77 P.S. § 671 (quoted in *Young*, 818 A.2d at 604). The Court then held:

> Pursuant to this statutory mandate, an insurer must seek subrogation for the full amount of compensation it is owed from the third-party tortfeasor responsible for the work injury. If, as here, the insurer **voluntarily** chooses to compromise the lien amount it is entitled to receive by way of statutory subrogation, it cannot then recoup the **compromised amount** through the Fund.
>
> Although Insurer was entitled to receive the full amount of its workers' compensation lien from the proceeds of the third-party tortfeasor settlement pursuant to Section 319 of the Act, it chose to compromise that amount. The Fund may not be used to finance Insurer's compromise.

*Young*, 818 A.2d at 604 (emphasis added). Unlike the insurer in *Young*, Insurer here did not voluntarily agree to compromise its subrogation lien by accepting an amount less than what it was entitled to receive but, rather, sought reimbursement for the full amount

paid to a claimant are not payments of compensation and, thus, are not reimbursable from the Supersedeas Fund. *Universal AM–CAN, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 870 A.2d 961, 966–67 (Pa.Cmwlth.2005). Moreover, although Section 319 of the Act entitled Insurer to subrogation under that section, Insurer is responsible for paying its pro rata share of the attorney's fees and costs expended in obtaining the proceeds of the Third–Party Settlement. Insurer has greatly benefited from the Third–Party Settlement because it obtained reimbursement of its accrued lien and the benefit of the grace period. Insurer seeks the best of both worlds by having the Supersedeas Fund pay for Insurer's share of the costs of recovering the proceeds of the Third–Party Settlement, which means that the Supersedeas Fund will essentially be funding the Third–Party Settlement, a result that was not intended by the Legislature.

In response, Insurer argues that both WCJ Deeley and the Board correctly concluded that Insurer is entitled to reimbursement from the Supersedeas Fund for the payments at issue. We agree.

WCJ Deeley and the Board correctly determined that Insurer is entitled to reimbursement from the Supersedeas Fund for the payments at issue. As the Board astutely observed, the payments for which Insurer is seeking reimbursement were payments of wage loss and medical benefits "[a]t the time of payment." (Board Op. at 8.) This Court has previously held

that the term "compensation," as used in Section 443(a), includes wage loss and medical benefits. *Insurance Co. of North America v. Workmen's Compensation Appeal Board (Kline and Packard Press)*, 137 Pa.Cmwlth. 393, 586 A.2d 500, 503 (1991), *aff'd*, 533 Pa. 112, 619 A.2d 1356 (1993). Here, Insurer began paying Claimant wage loss benefits at the rate of $410.00 per week, as well as medical benefits, following Claimant's injury in November of 2003. After the Third–Party Settlement, Insurer only paid Claimant at the rate of $164.42 per week from February 16, 2006 through October 11, 2006.[12] Insurer received some reimbursement directly from the proceeds of the Third–Party Settlement for the payments it had made to Claimant, as well as indirectly through the grace period during which Insurer did not have to pay Claimant the entire $410.00 per week compensation rate. However, as the Board correctly noted, Insurer did not receive full reimbursement for the compensation it paid to Claimant because Claimant was entitled to be reimbursed by Insurer for the recovery costs involved in securing the Third–Party Settlement. *See* 77 P.S. § 671 (stating that "[t]he employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement"); *P & R Welding & Fabricating v. Workmen's Compensation*

of compensation it was owed. In the Third–Party Agreement, Insurer merely recognized the proportion of its subrogation lien that it was legally entitled to retain at that time under Section 319, which has been interpreted to require that Insurer reimburse Claimant for the costs of recovery. *See Pergola*, 549 Pa. at 497–99, 701 A.2d at 564–65 (holding that the legal expenses attributable to the accrued lien and the grace period must be prorated between the employer and the claimant).

12. While the $164.42 per week that Insurer was required to pay Claimant during the grace period was calculated based on Insurer's share of the costs for recovering Claimant's balance of recovery from the Third–Party Settlement, this amount was, in effect, paid to Claimant to ensure that he received his full compensation rate of $410.00 per week during that period.

*Appeal Board (Pergola),* 549 Pa. 490, 498–99, 701 A.2d 560, 565 (1997) (stating that the legal expenses attributable to the grace period must also "be prorated between the employer and the" claimant under Section 319).

Moreover, Insurer requested supersedeas when it filed its Modification Petition on November 22, 2005, a request which WCJ Eader denied. As a result, Insurer continued paying Claimant compensation at the rate of $410.00 per week until February 15, 2006, and at the rate of $164.42 per week between February 16, 2006 and October 11, 2006. However, WCJ Eader ultimately determined that Claimant's benefits should have been suspended as of August 12, 2005, effectively rendering any compensation payments that Insurer made to Claimant after that date as not, in fact, payable. Thus, as the Board correctly explained, even though Insurer received some reimbursement for the compensation payments it made to Claimant through subrogation under Section 319, Insurer did not receive full reimbursement for the payments of compensation it continued to make to Claimant after requesting and being denied supersedeas. Those payments were ultimately determined to not, in fact, be payable, and, accordingly, reimbursement from the Supersedeas Fund would be proper.

The Bureau is correct that Section 319 generally requires an insurer to share in the costs of recovering a third-party settlement. However, like the Board, we discern no clear indication from Section 319 that an insurer is required, in the context of Supersedeas Fund reimbursement, to assume the costs of recovering a third-party settlement for periods in which there has been a determination that compensation was not, in fact, payable. The Pennsylvania Supreme Court, in *Pergola,* stated that, under Section 319, "when the employee's recovery in a third-party action provides the employer with repayment of its accrued lien, the employer must **at the same time** reimburse the employee for the proportionate share of the legal expenses expended to recover that amount." *Pergola,* 549 Pa. at 498, 701 A.2d at 564 (emphasis added). The Supreme Court also stated that, under Section 319, "the legal expenses attributable to the future credits (i.e., the amount of legal expenses which were not previously attributable to the employer's accrued lien) must be prorated **as the employer becomes entitled to the future credit received.**" *Id.* at 498, 701 A.2d at 565 (emphasis added). Thus, under the Supreme Court's interpretation of Section 319, the requirement that an employer or insurer pay its pro rata share of the attorney's fees and costs is meant to properly distribute the costs of the particular benefit being received from the third-party settlement to the appropriate party as the benefits are received. In other words, **the costs follow the benefits.**

As the Board correctly observed, this theory breaks down, in cases such as this one, where the insurer does not ultimately realize any benefit from the third-party settlement. The benefit that Insurer initially received as a result of the Third–Party Settlement ultimately flowed to the Supersedeas Fund. That is, in the absence of the Third–Party Settlement, Insurer would have continued paying Claimant $410.00 per week through October 11, 2006, and the Supersedeas Fund would have been obligated to reimburse Insurer 100% for those payments. Therefore, like the Board, we do not believe that "Section 319 converts the compensation paid for [wage loss] and medical benefits into something else for purposes of Section 443." (Board Op. at 8.)

Furthermore, while the Bureau relies on *Minteer*, we agree with Insurer and the Board that *Minteer* is distinguishable because it "was not a subrogation case involving Section 319 of the Act," but, instead, involved a request "for a refund of litigation costs or attorney fees ... under Section 440." (Board Op. at 8.) Section 440 of the Act, 77 P.S. § 996, provides that attorney's fees and costs may be awarded to a successful claimant on the basis of an unreasonable contest. In *Minteer*, this Court held that the unreasonable contest attorney's fees and costs provided for in Section 440(a) "are not 'compensation,' but are in addition to 'compensation'" and, therefore, denied reimbursement from the Supersedeas Fund. *Id.* at 967. We are faced with an entirely different issue in the present case.

Here, Insurer is seeking reimbursement for payments that, when made to Claimant, were payments of wage loss and medical benefits, which clearly constitute "compensation" under Section 443(a). *Kline*, 586 A.2d at 503. Moreover, although the *amounts* for which Insurer is seeking reimbursement correlate to what was designated as recovery costs when the subrogation calculations were made under Section 319, as the Board correctly stated, Section 319 does not "convert[ ] the compensation paid for [wage loss] and medical benefits into something else for purposes of Section 443(a)." (Board Op. at 8.) Thus, unlike *Minteer*, this case does not involve payments that were **in addition to compensation;** instead, the payments in this case were **payments of compensation.**

Finally, while the Bureau argues that Insurer greatly benefited from the proceeds of the Third–Party Settlement and that Insurer is seeking the best of both worlds by having the Supersedeas Fund pay for the costs of recovering the proceeds of the Third–Party Settlement, the Bureau's argument misses the point. Insurer did benefit in some respects from the Third–Party Settlement, and Insurer paid for the costs of recovering such benefits as required by Section 319. However, as explained above, Insurer did not realize any benefit from the Third–Party Settlement during the time periods for which reimbursement is being sought; instead, the benefit of the Third–Party Settlement during those periods flowed entirely to the Supersedeas Fund. The Bureau, itself, may be seeking the best of both worlds by having Insurer pay for the costs of recovering the proceeds from the Third–Party Settlement, which ultimately relieved the Supersedeas Fund from having to reimburse Insurer for the payment of ongoing compensation payments. Because the costs follow the benefits under Section 319, *Pergola*, that section does not require Insurer to bear the costs of recovering benefits that it never actually realized.

For the reasons set forth above, we conclude that the payments for which Insurer is seeking reimbursement were payments of "compensation" under Section 443(a), which were continued after a supersedeas was requested and denied, but which were later determined to not, in fact, be payable. Therefore, we further conclude that WCJ Deeley and the Board correctly determined that Insurer is entitled to reimbursement from the Supersedeas Fund. Accordingly, the Board's order upholding WCJ's Deeley's grant of Insurer's Application is affirmed.

### ORDER

NOW, January 11, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**

DISSENTING OPINION BY Judge PELLEGRINI.

The central issue in this appeal is whether payments Insurer made to Claimant for

the recovery costs associated with obtaining a third-party settlement qualify as "compensation" under Section 443(a) of the Pennsylvania Workers' Compensation Act (Act).[1] Because I believe that such fees do not meet the requirements for reimbursement from the supersedeas fund, I respectfully dissent.

The purpose of the supersedeas fund is to protect an employer who makes compensation payments to an employee who ultimately is determined not to have been entitled to those payments by providing a means of reimbursement. *City of Wilkes–Barre v. Workers' Compensation Appeal Board (Spaide)*, 868 A.2d 620 (Pa.Cmwlth. 2004). Section 443(a) of the Act outlines the requirements for reimbursement as follows:

> If, in any case in which a supersedeas has been requested and denied under the provisions of *Sec. 413 or Sec. 430,* payments of *compensation* are made as a result thereof and upon the final outcome of the proceedings, it is determined that such *compensation* was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor. . . .

77 P.S. § 999(a). (Emphasis added). Because what is sought here is reimbursement not for compensation that employer had to pay but for attorney's fees and costs governed by Section 319 of the Act, not Sections 413 and 430 of the Act, I disagree with the majority that reimbursement from the supersedeas fund is authorized.

Whether payments can be recovered from the supersedeas fund in this case in part turns on whether those payments were for "compensation" as that term is used in Section 443(a) of the Act. While the Act itself does not define the term "compensation," it is settled that a determination of what constitutes "compensation" must be made on a section-by-section basis by examining the statutory language and legislative intent. *Berwick Industries v. Workers' Compensation Appeal Board (Spaid)*, 537 Pa. 326, 643 A.2d 1066 (1994). We have defined compensation for the purposes of Section 443 of the Act as including both wage loss and medical expenses for employees' injuries sustained in the course of employment. *Insurance Co. of North America v. Workers' Compensation Appeal Board (Kline and Packard Press)*, 137 Pa.Cmwlth. 393, 586 A.2d 500 (1991), *aff'd per curiam*, 533 Pa. 112, 619 A.2d 1356 (1993).

In *Universal AM–CAN, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 870 A.2d 961 (Pa.Cmwlth.2005), we held that an employer was not entitled to reimbursement from the supersedeas fund for its attorney's fees and litigation costs incurred in directly litigating an employee's compensation claim because such fees did not fall within the definition of the term "compensation." While our holding in *Minteer* is not necessarily controlling in this matter, because this case involves a third-party settlement rather than direct litigation of an employee's worker's compensation claim under Section 440 of the Act, the result should be the same.

The supersedeas fund does not exist to satisfy the obligations of a third-party tortfeasor and it does not assume financial responsibility for an injury caused by a third-party. *Kidd–Parker v. Workers' Compensation Appeal Board (Philadelphia Sch. Dist.)*, 907 A.2d 33 (Pa.Cmwlth. 2006). Eligibility for attorney's fees and costs are governed by Section 319 of the Act which provides for subrogation of the

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 999(a).

employer in third-party injury cases; however, it also provides as follows:

> [R]easonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time or recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employee ... and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671.

While Section 319 allows an employer to recoup its accrued lien from a third-party settlement and treat any balance of recovery as satisfaction of any future payments of compensation, an employer remains responsible for its share of the expenses and attorney's fees expended in obtaining a third-party settlement. These fees are not "compensation" in and of themselves, but rather the costs that must be borne by an employer to obtain the ability to not have to pay compensation. Insurer has already recouped the wage loss and medical expenses it paid to Claimant through reimbursement of its accrued lien and the benefit of the grace period. The remaining amount it wishes to be reimbursed for is not compensation, but rather its pro rata share of the attorney's fees and costs expended in obtaining these benefits of the third-party settlement.

Not only are attorney's fees and costs not "compensation," the provision authorizing collection of those costs is governed by Section 318 of the Act, which makes them, by definition, ineligible for supersedeas fund reimbursement. Reimbursement is only authorized for compensation paid as a result of denial of a supersedeas under Sections 413 and 430 of the Act. Both of those provisions involve the obligation of an employer to pay benefits when an employer is attempting to modify benefits or a claimant is awarded benefits.[2] Because Section 443 does not authorize reimbursement for a Section 318 claim, based on the plain language of the statute, supersedeas fund reimbursement is not available for petitions filed under § 306(f.1)(8). *See Department of Labor and Industry, Bureau of Workers' Compensation v. Workers'*

---

**2.** Under Section 413 of the Act, the filing of a petition to terminate, suspend or modify a notice of compensation payable, compensation agreement or award may operate as a request for a supersedeas to suspend the payment of compensation fixed in the agreement or award, depending on whether the petition alleges that the claimant has fully recovered. In that situation, if it is accompanied by an affidavit of a physician based on a physical examination within 21 days prior to the petition being filed, the petition automatically operates as a request for supersedeas. In any other case, the petition does not automatically operate as a supersedeas but may be designated as a request for a supersedeas, which is granted at the discretion of the WCJ. While Section 413 deals with what occurs when an employer files a petition to modify compensation already being paid, Section 430 of the Act deals with an adverse ruling to the employer after the WCJ or the Board awards benefits. In such a situation, the filing of an appeal from a WCJ's or Board's decision granting benefits does not lift the "lien of judgment" or operate as a supersedeas. Instead, the employer must file a petition for supersedeas and must continue paying benefits pursuant to the WCJ's decision until such time that a request for a supersedeas is granted.

*Compensation Appeal Board (Exel Logistics)*, 586 Pa. 85, 890 A.2d 1045 (2005).

Because the fees associated with recovery of a third-party settlement are not compensation, they are not reimbursable under Section 443(a) of the Act. For this reason, I would reverse the Board and respectfully dissent.