23 A.3d 511

**DEPARTMENT OF LABOR & INDUSTRY, BUREAU OF WORKERS' COMPENSATION, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (CRAWFORD & COMPANY), Appellees.**

Supreme Court of Pennsylvania.

Argued May 11, 2010.

Decided July 19, 2011.

Janet Louise Palese, Thomas Joseph Kuzma, Harrisburg, PA Bureau of Workers' Compensation, for Bureau of Workers' Compensation.

Karyn Dobroskey Rienzi, Jonathan B. Sprague, Post & Schell, P.C., Philadelphia, Perry David Merlo, Post & Schell, P.C., Lancaster, for Crawford & Company.

Richard C. Lengler, Harrisburg, Amber Marie Kenger, for Worker's Compensation Appeal Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

Claimant Kevin Ressler suffered a recognized work injury July 21, 1995, in the nature of tendonitis of the right shoulder. A notice of compensation payable was issued, and Mr. Ressler began receiving Workers' Compensation benefits and coverage for his medical bills. On March 16, 2004, Mr. Ressler submitted to an independent medical evaluation (IME); the sequence of events thereafter is the crux of this case.

On June 1, 2004, Mr. Ressler had surgery, purportedly associated with the work-related injury. On July 19, 2004, employer filed a petition to terminate benefits as of March 16, the date of the IME. The employer concurrently requested supersedeas pursuant to § 413 of the Workers' Compensation Act, 77 P.S. §§ 1–1041.4. A Workers' Compensation Judge (WCJ) denied the supersedeas request August 30, 2004. On October 11, 2004, a $35,405.45 bill for the June 1 surgery was submitted to the insurer, which paid the bill January 25, 2005. On June 28, 2005, a WCJ granted the employer's July 19 petition to terminate benefits. The Workers' Compensation Appeal Board (WCAB) affirmed the decision.

The insurer then requested reimbursement of $35,405.45 from the Supersedeas Fund.[1] However, the Bureau of Workers' Compensation, in its capacity as conservator of the Fund, challenged the request because Mr. Ressler's surgery predat-

---

1. *See* 77 P.S. § 999(b) ("There is hereby established a special fund in the State Treasury, separate and apart from all other public moneys or funds of this Commonwealth, to be known as the Workmen's Compensation Supersedeas Fund. The purpose of this fund shall be to provide moneys for payments to include reimbursement to the Commonwealth for any such payments made from general revenues. The department shall be charged with the maintenance and conservation of this fund. The fund shall be maintained by annual assessments on insurers and self-insurers under this act, including the State Workmens Insurance Fund.").

ed the supersedeas request.[2] The WCJ found that while a service date generates the *potential* for a claim, no obligation to pay arose until a bill was submitted to the insurer in October; as the obligation to pay arose after the denial of supersedeas, reimbursement was appropriate. The WCAB affirmed.

> On appeal, the *en banc* Commonwealth Court determined: the language of Section 443 of the Act "is clear in its focus on *payments* made rather than on periods of disability" and "contains *no plain language prohibiting reimbursement of retroactive benefits.*" Thus, "the right to reimbursement relates to *payments made after denial of a supersedeas request.*" Here, it does not matter that the date of service of the medical expenses in question preceded the request for supersedeas—what matters is that the treatment in question was later determined to be ineligible for payment, and the bill for that treatment was *submitted to and paid* for by Insurer *after* supersedeas was requested and denied. Thus, we agree with the Board that Insurer is eligible for reimbursement from the Supersedeas Fund. This outcome is clearly in line with the language of the statute and recent case law.

*Dep't of Labor Indus. Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (Crawford & Co.)*, 965 A.2d 332, 338–39 (Pa.Cmwlth.2009) (*en banc*) (emphasis in original) (citations omitted).

Judge Pellegrini, joined by Judge Friedman, dissented, opining that whether a payment is made "as a result" of supersedeas denial is determined by whether the insurer would have been required to pay the bill if the supersedeas had been granted. *Id.*, at 340 (Pellegrini, J., dissenting). He

---

**2.** Section 443(a) provides:

> If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor.

> *Id.*, § 999(a).

stated supersedeas only relieves the insurer of making payments from the day of its granting and does not sanction recoupment of any payments made prior to that date. *Id.*, at 341. Under Judge Pellegrini's analysis, even if supersedeas had been granted, the insurer was still obligated to pay expenses incurred before it filed the supersedeas request, such that the payments made could not have been made as the result of supersedeas denial, as is required by § 443(a). *Id.*

We granted appeal to consider "[w]hether the Supersedeas Fund may deny reimbursement of medical treatment rendered before an insurer requested supersedeas, where the Workers' Compensation Act only permits reimbursement of amounts paid as a result of a denial of supersedeas?" *Dep't of Labor Indus. Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (Crawford & Co.),* 604 Pa. 685, 987 A.2d 637 (2009) *(per curiam* ).

The Bureau argues § 443(a)'s language pertaining to payments made "as a result" of a denial of supersedeas does not allow the insurer to recover reimbursement for treatment costs incurred prior to the supersedeas filing. As the insurer did not request supersedeas until six weeks after the surgery, the insurer could not have made the payment as a result of denial of supersedeas as required by § 443(a). Payment, the Bureau argues, was an obligation cemented by the failure to seek supersedeas before the service was provided. To find as did the Commonwealth Court, it contends, may encourage insurers to withhold payment of medical bills until after supersedeas requests are resolved, improperly shifting medical costs to the Supersedeas Fund and its contributing employers.

The insurer points to the plain language of § 443(a), which does not mention medical services when referring to supersedeas timing; the statute points to "payment of compensation" as the triggering event when evaluating an insurer's right to reimbursement. It contends it is sufficient under § 443(a) that Mr. Ressler's treatment occurred after he had fully recovered, and the relevant medical bill was submitted to and paid by the insurer after the date supersedeas was requested

and denied. Section 413 echoes this conclusion: "A supersedeas shall serve to suspend the *payment of compensation* in whole or to such extent as the facts alleged in the petition would, if proved, require." 77 P.S. § 774(2) (emphasis added).

The insurer discounts the Bureau's policy arguments, pointing out the Act requires insurers to make all payments within 30 days of receipt unless the bill itself is disputed; thus, there is no incentive for insurers to delay payments because they will be penalized for doing so. It further notes the Supersedeas Fund is maintained for the very purpose embodied in this case—it is simply seeking reimbursement from the Fund to which it contributed of the amount it paid for a bill that was ultimately determined to be unrelated to Mr. Ressler's work injury.

In reviewing an agency decision, our standard of review is restricted to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 584 A.2d 301, 303 (1990). Statutory interpretation poses a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 593 Pa. 174, 928 A.2d 1006, 1009 (2007).

The elements in the relatively straightforward language of § 443(a) can be examined in order, as the facts are not in dispute. First, is this a case "in which a supersedeas has been requested and denied"? It is—supersedeas was requested in July, 2004, and denied August 20, 2004. Second, was the request under the provisions of § 413 or § 430? The record shows it was under § 413.[3] Third, were payments

3. Section 413 concerns alterations to an existing compensation framework, whereas § 430 generally involves appeals from an adverse WCJ judgment. While there are various distinctions between the two provisions, *see, e.g., Mark v. Workers' Comp. Appeal Bd. (McCurdy)*, 894 A.2d 229, 236 (Pa.Cmwlth.2006) (*en banc*) (discussing treatment of both sections by Commonwealth Court), those differences are not relevant to our current inquiry. The fact that the legislature coupled the two

made "as a result" of the August 20 denial? This is the contested element. The bill for the June surgery did not arrive until six weeks after the denial of supersedeas, and as denial meant the insurer was not relieved of the obligation to pay the bill, payment was indeed the result of the denial. Someone owed payment on the surgical bill, but the insurer denied liability for it—payment by the insurer of the bill (pending resolution of liability) was mandated by denial of supersedeas, not from an obligation necessitated by the surgery itself. Lastly, was there a final determination that compensation was not in fact payable? Yes, the WCJ ultimately granted the petition to terminate benefits as of the March 16, 2004 IME date. Accordingly, "the insurer who has made such payments shall be reimbursed therefor." 77 P.S. § 999(a).

As a result of the August supersedeas denial, the insurer had no choice but to pay the October bill, despite the fact that Mr. Ressler's surgery corrected no work-related injury. That ultimate obligation to pay was undetermined when the bill was due, but the duty to pay it in the meantime fell to the insurer as supersedeas had been denied. Ultimately, it was not an obligation of the insurer; the insurer's payment cannot be the result of the surgery, for in the end, it had no responsibility for that bill at all. What the insurer did have the obligation to do was cover the bill pending the final determination, and that obligation was the direct and singular result of the denial of supersedeas.

To make reimbursement dependent on the date of the event giving rise to the bill is to insert an additional element into the statute. In fact, Judge Pellegrini's dissent is telling. Judge Pellegrini states "grant of supersedeas only relieves an employer of making *payments* from the day it was granted; it does not authorize the recoupment of any *payments* made before that date." *Crawford & Co.*, at 341 (Pellegrini, J.,

provisions shows § 443(a) must apply equally to each, and there is no reason to differentiate applicability of § 443(a) based on which of the two was involved. What is relevant is that supersedeas was requested pursuant to one of those sections, in this case § 413.

dissenting) (emphasis added). The insurer is not asking for payments made before the supersedeas filing date, much less the date of granting supersedeas—this is about a payment made after denial, an obligation incurred when the insurer was denied permission to suspend compensation payments.

The legislature has expressly conferred broad suspension authority on WCJs during the litigation of termination, suspension, or modification petitions, 77 P.S. § 774(2), and we cannot find a WCJ lacks the authority to suspend insurer-provided compensation payments relative to treatment rendered before the date of a supersedeas request. One can fathom a host of situations where justice might require a supersedeas relative to payment for past medical services, such as where the treatment is unrelated to a work injury, the employer had no notice or opportunity to challenge the treatment prior to its execution, or where the insurer has no precertification or prior approval of the treatment. To tie the WCJ's hands in light of the plain language of the statute and the clear authority provided by the legislature would go against our duty to effectuate the legislature's intentions, 1 Pa.C.S. § 1921(a), and we decline to do so.

The insurer challenged its obligation via the supersedeas—when that was denied, the insurer lost the right to delay payment until the issue of responsibility was resolved. The insurer continued meeting its responsibility until the WCJ found Mr. Ressler was not suffering from a work-related injury at the time of the surgery. Had supersedeas been granted, payment would not have been made, but supersedeas was not granted and payment necessarily followed. It is the bill, post-denial, that caused money to leave the coffers of the insurer. Ergo, payment resulted from the denial. As the date the bill arose is irrelevant under the plain language of the statute, we find the Commonwealth Court appropriately ordered reimbursement to the insurer for undue payments made after request of supersedeas and in direct response to its denial.

Order affirmed; jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER and ORIE MELVIN join the opinion.

Justice McCAFFERY files a dissenting opinion in which Justice TODD joins.

Justice McCAFFERY, dissenting.

Because I read Section 443(a) of the Workers' Compensation Act ("Act") [1] somewhat differently than does the majority, and have a different view than that of the majority regarding the nature of supersedeas under the Act, I must respectfully dissent. My views are more closely in accord with that of the Commonwealth Court dissenting opinion and the general argument of the Bureau of Workers' Compensation ("Bureau") in this case.

As the majority points out, the contentious issue here is what Section 443(a) means when it provides that "payments of compensation are made **as a result**" of a denial of supersedeas requested by an employer under Sections 413 or 430 of the Act. 77 P.S. § 999(a) (emphasis added). Central to interpreting this phrase is how a **grant** of supersedeas alters an employer's responsibilities under the Act. The majority asserts that had the employer's supersedeas request been granted here, rather than denied, the employer would have been relieved of its obligation to pay the surgery bill. Majority *op.* at 17, 23 A.3d at 515–16. Respectfully, I believe that this is incorrect.

We have recognized "the longstanding principle" that, absent a supersedeas, the burden remains on the employer to continue to pay medical and other compensation during a litigation period.[2] *Gardner v. Workers' Compensation Appeal*

1.  77 P.S. § 999(a).

2.  *See* Section 306(f.1)(1)(i) of the Act, which provides, *inter alia,* that "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1). Section 306(f.1)(6) gives an employer some relief from its general obligation under Section 306(f.1)(1)(i) by providing for a mechanism to challenge the reasonableness or necessity of treatment. 77 P.S. § 531(6).

*Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758, 765 n. 6 (2005) (citing with approval *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285, 288–89 (Pa.Cmwlth.2002)). *McLaughlin* provided as follows:

> Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment in the absence of a final receipt, an agreement, a supersedeas or any other order of the WCJ authorizing such action. *Kuemmerle v. Workers' Compensation Appeal Board (Acme Markets, Inc.)*, 742 A.2d 229 (Pa. Cmwlth.1999). Absent such authority, therefore, **the employer must continue to make payment while challenging the claimant's entitlement to benefits.** *Jones v. Workers' Compensation Appeal Board (Pennsylvania Power & Light)*, 735 A.2d 185 (Pa.Cmwlth.1999), *appeal denied*, 567 Pa. 750, 788 A.2d 381 (2001); *Crucible, Inc. v. Workers' Compensation Appeal Board (Vinovich)*, 713 A.2d 749 (Pa. Cmwlth.1998); *Loose v. Workmen's Compensation Appeal Board (John H. Smith Arco Station)*, 144 Pa.Cmwlth. 332, 601 A.2d 491 (1991).

*Id.* at 288–89 (emphasis added).

In the present case, the employer had not yet filed its termination petition and request for supersedeas by the time of the surgery in question. My reading of the above authority leads me to conclude that the employer would have been responsible for paying the surgery bill even had its supersedeas request been granted, because the claimant's treatment occurred prior to that request. A grant of supersedeas would only have **suspended** the employer's obligation to pay benefits accruing **after** supersedeas had been requested. *See* Section 413(a.2) of the Act, 77 P.S. § 774(2) (providing that "supersedeas shall serve to **suspend** the payment of compensation in whole or to such extent as the facts alleged in the petition would, if proved, require.") (emphasis added).[3]

3. This case concerns a Section 413(a.2) supersedeas proceeding, where a grant of supersedeas serves to "suspend" compensation. Therefore, had supersedeas been granted in this case, that action would necessari-

Related to the above, the majority does not explain the anomalous result that springs from its holding, to wit, that the right to recoup payment for the **same** medical treatment is now dependent upon whether the bill for this treatment is presented to and paid by the employer prior to or **after** the supersedeas request. Stated another way, the majority's holding essentially hinges on the arbitrary fact present in this case that the medical provider had taken its time to submit the bill for payment.

I do not discount the important salutary purpose of Section 443(a) to provide a mechanism for an employer to be reimbursed for benefit payments made that are ultimately determined to be unrelated to the work injury. However, Section 443(a) provides only for a specific and limited **mechanism** under which there may be reimbursement from the Supersedeas Fund, not for a total recapture of benefits paid. In this regard, Section 443(a) evidences another important legislative goal that we must consider, as well.

Distilled to its elements, Section 443(a) requires that: (1) a supersedeas **must** be requested and denied in a proceeding falling under either Section 413 or 430; (2) "payments of compensation are made as a result thereof"; **and** (3) by the conclusion of the proceeding, there is a determination that "such compensation was not, in fact, payable." It is significant that the General Assembly made Fund reimbursement dependent on **all** of these elements. The General Assembly could have—but chose not to—simply provide for automatic and **full** reimbursement where it is determined that the employer made payments of compensation that are ultimately determined to be unrelated to the work injury. Had the General Assembly done so, it certainly would have fulfilled the goal of relieving the employer from paying **any** benefits unrelated to the work injury, a consideration that the majority here apparently considered very important in its analysis. *See* Majority *op.* at 16–17, 23 A.3d at 515.

ly only have had an impact upon compensation that would have been due and owing after the date for which supersedeas was granted.

However, the General Assembly did not provide for such all-encompassing relief. Rather, the General Assembly hinged the employer's recoupment of benefits paid upon the employer's **prompt** action. Section 413 of the Act provides for an **automatic** supersedeas process in the event an employer files a petition to terminate, suspend, or modify where the petition is accompanied by a physician's affidavit asserting the employee's full recovery, based upon a medical examination made **within twenty-one days** of the filing of the employer's petition. Section 413(a.1) of the Act, 77 P.S. § 774(a.1). However, "in any other case," where there has been no compliance with Section 413(a.1), including the instant one, a filing of a petition to terminate, suspend, or modify does "not automatically operate as a supersedeas." Section 413(a.2) of the Act, 77 P.S. § 774(a.2). Rather, such petition serves only as a request for supersedeas, which may or may not be granted, in the WCJ's discretion, following a hearing. *Id.* This section specifically provides that "[a] supersedeas shall serve to suspend the payment of compensation in whole or to such extent as the facts alleged in the petition would, if proved, require." *Id.* Thus, I read from these provisions (1) an important legislative goal to encourage employers to act promptly, where prompt action rewards employers with greater relief; and (2) that such relief is confined to a "suspension" of the employer's obligation to pay benefits, not a retroactive recoupment of benefits.

Applying my interpretation of Sections 413(a.2) and 443(a) to the present matter, I believe that the employer is entitled to supersedeas relief only regarding those benefits due and owing as of the date it requested supersedeas, and thereafter. Thus, the employer is not entitled to relief for any benefits due and owing prior to its supersedeas request. As the surgical procedure here occurred prior to the employer's supersedeas request, the employer could not seek suspension of its obligation to pay under Sections 413(a.2) and 443(a) any more than it could seek suspension of disability benefits due and owing prior to the date supersedeas was requested. The fact that the bill for that procedure was submitted after the

date supersedeas was requested is, in my view, a happenstance unrelated to the focus of Sections 413(a.2) and 443(a). Had the billing department of the hospital submitted its bill immediately, and the employer paid the bill as required under the Act, which would have been before the date the employer requested supersedeas, there would be no question that the employer could not seek Supersedeas Fund reimbursement for this expense under Section 443(a).

Finally, I note that the Act reflects a series of legislative solutions and compromises creating a carefully considered overall scheme that may be unintentionally thrown off by judicial interpretations that focus on perceived equities, particularly those not inuring to the claimant. There is a strong current in the majority's analysis that it would simply be inequitable for the employer to pay for a surgical procedure that was ultimately determined to be unrelated to the underlying work injury. However, absent from the majority's analysis is a focus on the efficiencies built into the legislative scheme, which require the employer to take timely action in order to fully reap the benefits the Act relevantly provides. Because of that circumstance, and my interpretation of what the General Assembly intended by confining supersedeas relief under Section 413(a.2) to a "suspension" of an employer's obligation to pay benefits, I respectfully dissent.

Justice TODD joins this dissenting opinion.