58 A.3d 18

**DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKERS' COMPENSATION, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (EXCELSIOR INSURANCE), Appellees.**

Supreme Court of Pennsylvania.

Argued March 6, 2012.

Decided Nov. 21, 2012.

30

Barbara Adams, PA Office of General Counsel, Thomas J. Kuzma, Harrisburg, Janet Louise Palese, Jane C. Pomerantz,

Harrisburg, for Department of Labor and Industry, Bureau of Workers' Compensation.

Stephanie Lynn Hersperger, John Trowbridge Huskin Jr., Thomas, Thomas & Hafer, L.L.P., Harrisburg, for Excelsior Insurance.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, PA Department of Labor & Industry, for Workers' Compensation Appeal Board.

Michael D. Sherman, Fried, Kane, Walters, Zuschlag & Grochmal, Pittsburgh, for Appellee Amicus Curiae, Pennsylvania Defense Institute.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

We granted review to consider whether a Workers' Compensation employer's insurance carrier should be reimbursed from the Supersedeas Fund for specific payments made to a claimant prior to the ultimate grant of supersedeas. The question turns on whether the relevant payments constituted payments of "compensation" within the meaning of Section 443 of the Workers' Compensation Act ("WCA"), 77 P.S. § 999(a), or, as argued by Appellant Bureau of Workers' Compensation ("Bureau"), whether the payments are not reimbursable because they constitute payment of legal costs associated with obtaining a claimant's third-party tort settlement under Section 319 of the WCA, 77 P.S. § 671. After review, we find no language in either Section 443 or Section 319 that would transform the relevant payments into something other than compensation merely because the amounts of the payments were calculated to compensate the claimant for the costs of recovering the third-party settlement. Accordingly, we affirm the decision of the Commonwealth Court.

Claimant Mark Oestereich ("Claimant") worked as a service technician for Filter Tech, Inc., changing filters and perform-

ing inspections on commercial heating and air conditioning units. In November 2003, he suffered work-related bilateral ankle fractures when he fell from a ladder at a Wendy's restaurant in Carlisle, Pennsylvania. As a result, Claimant had surgeries on both legs, was in a wheelchair for three months, used crutches for an additional six months, and had continuing lifting restrictions.

Following the 2003 injury, Appellee Excelsior Insurance ("Employer's Insurer"), Filter Tech's Workers' Compensation insurance carrier, paid Claimant Workers' Compensation benefits of $410.00 per week ("Weekly Compensation Rate").[1] On November 22, 2005, Employer's Insurer filed a petition to modify benefits, alleging that medically appropriate work was available to Claimant as of August 12, 2005, and requested supersedeas. A Workers' Compensation Judge ("WCJ") denied Employer's Insurer's request for supersedeas in January 2006. Later, Employer's Insurer orally amended the petition to modify, requesting a suspension of benefits as of August 12, 2005.

Subsequently, Claimant settled his claim against a third-party tortfeasor for $310,000.00 ("Settlement Total"). In February 2006, Employer's Insurer and Claimant entered into an agreement ("Third–Party Settlement Agreement") providing for the distribution of the settlement in compliance with Section 319, as interpreted by this Court in *P & R Welding & Fabricating v. WCAB (Pergola)*, 549 Pa.490, 701 A.2d 560 (1997).[2] As discussed in detail below, Section 319 provides

---

1. While the statutes relevant to this case refer to an "employer," Employer's Insurer acted on Filter Tech's behalf in paying benefits to Claimant and is the moving party herein. Accordingly, the references to "employer" in the statutes will be read to apply to Employer's Insurer for purposes of this case.

2. Section 319 is entitled "Subrogation of employer to rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award" and provides in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e], his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attor-

specific direction for the distribution of a claimant's settlement from a third-party tortfeasor between the claimant and the employer. At its most basic, Section 319 provides that the employer shall recover from the settlement the amount it previously paid to the claimant, minus the claimant's legal costs of recovering that amount. If the settlement exceeds the amount previously paid by the employer, then the balance is paid to the claimant but treated as advance payment of future compensation by the employer, such that the employer is granted a grace period during which it does not have to make compensation payments for a certain number of weeks. The employer, however, is responsible for the remaining legal costs of recovering the amount attributable to the grace period. While simple in concept, the application of Section 319 presents various complications, including how to treat the division of the attorney fees, which Section 319 directs to be prorated between the employer and the claimant.

In *Pergola*, we determined that the proper method of apportioning the legal fees required the use of the gross method, rather than the net method, of calculation. The main difference between the two methods is that under the net method the legal costs are deducted initially from the total recovery to determine the amount available for future credit during the grace period, whereas the gross method prorates the legal fees as the employer receives the benefit during the grace period. Under the gross method, the employer receives a longer grace period and has the payment of the legal costs

ney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe[e], his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe[e], his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future ins-tal[l]ments of compensation.
77 P.S. § 671.

spread over the grace period.[3]

Applying Section 319 and *Pergola* to the case at bar, the parties agreed that $120,698.48 of the $310,000 Settlement Total was subject to subrogation under Section 319 as the amount Employer's Insurer had previously paid in benefits to Claimant ("Employer Accrued Lien"). 77 P.S. § 671 ("Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e] . . . against such third party to the extent of the compensation payable under this article by the employer. . . .") (internal footnote omitted).

The Third–Party Settlement Agreement additionally recognized that Section 319 provides for the proration of the claimant's expenses of recovery between the employer and claimant. *Id.* ("[R]easonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe[e]. . . ."). Accordingly, the parties first determined that Claimant expended $124,314.23 ("Total Expenses of Recovery") to recover the settlement. In order to prorate this amount, the parties recognized that the Employer's Accrued Lien amounted to thirty-nine percent of the Settlement Total.[4] Therefore, they prorated to Employer's Insurer thirty-nine percent of the Total Expenses of Recov-

3. This Court explained the "gross method" as follows:

Under the gross method, any balance of recovery is determined by deducting the employer's accrued lien from the total recovery. When the claimant's recovery in the third-party action provides the employer with repayment of its accrued lien, the employer must reimburse the claimant for the claimant's proportionate share of the costs expended to recover that amount. The remaining legal expenses are attributable to the balance of recovery. Next, one calculates the credit or grace period due to the employer. In doing this, the balance of recovery is divided by the weekly compensation rate being paid to the employee. Finally, the expenses attributable to the balance of recovery are divided by the number of weeks in the grace period in order to determine the amount of legal expenses to be paid by the employer to the claimant in installments each week during the grace period.

*Pergola,* 701 A.2d at 563.

4. $120,698.48 (Employer Accrued Lien)/$310,000 (Settlement Total) = 0.3893499 or 39%.

ery, specifically $48,401.73 ("Employer's Initial Share of Expenses of Recovery").[5] Thus, Employer's Insurer, as reimbursement of the amount it had previously paid in Workers' Compensation benefits, received the amount left after subtracting the Employer's Initial Share of Expenses of Recovery from the Employer's Accrued Lien, for an Employer Net Lien of $72,296.75.[6] *Id.*

Returning to consideration of the recovery received by Claimant, the parties subtracted the Employer Accrued Lien from the Settlement Total, which resulted in a balance of recovery of $189,301.52 (Balance of Recovery).[7] As noted, Section 319 provides that "[a]ny recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe[e] ... and shall be treated as an advance payment by the employer on account of any future instal[l]ments of compensation." *Id.* Accordingly, utilizing the gross method, the agreement divided Claimant's Balance of Recovery ($189,301.52) by his previous Weekly Compensation Rate to determine that Employer's Insurer would be entitled to a grace period of 461.7 weeks.[8] Recognizing that $75,912.50 of Expenses of Recovery remained uncompensated,[9] the parties also calculated the weekly prorated share of the remaining Expenses of Recovery to determine that Employer's Insurer would pay Claimant $164.42 each week during the grace period.[10]

5. 39% (specifically 38.93499%) of $124,314.23 (Total Expenses of Recovery) = $48,401.73 (Employer's Initial Share of Expenses of Recovery).

6. $120,698.48 (Employer Accrued Lien) − $48,401.73 (Employer's Initial Share of Expenses of Recovery) = $72,296.75 (Employer's Net Lien).

7. $310,000.00 (Settlement Total) − $120,698.48 (Employer Accrued Lien) = $189,301.52 (Balance of Recovery).

8. Balance of Recovery ($189,301.52)/Weekly Compensation Rate ($410) = 461.7 weeks of grace period.

9. $124,314.23 (Total Expenses of Recovery) − $48,401.73 (Employer's Initial Share of Expenses of Recovery) = $75,912.50 (Expenses of Recovery Attributable to Balance of Recovery)

10. $75,912.50 (Expenses of Recovery Attributable to Balance of Recovery)/461.7 weeks of grace period = $164.42.

Following several months of grace period payments by Employer's Insurer to Claimant pursuant to the Third–Party Settlement Agreement, in November 2006, the WCJ granted the Employer's Insurer's petition to suspend Claimant's benefits as of August 12, 2005.[11] Following the WCJ's November 2006 decision suspending benefits, Employer's Insurer filed an application for Supersedeas Fund reimbursement seeking the unreimbursed portion of the amount it paid Claimant between November 22, 2005, and February 15, 2006 ("Unreimbursed Pre–Settlement Payments"),[12] and the $164.42 weekly payments it paid between February 16, 2006, and October 11, 2006 ("Grace Period Payments").[13] The Bureau, as conservator of the Supersedeas Fund, opposed the application arguing that Unreimbursed Pre–Settlement Payments and the Grace Period Payments were not compensation reimbursable under Section 443,[14] but instead constituted payments of counsel fees.

11. Additionally, in October 2006, Employer's Insurer and Claimant entered into a Compromise and Release Agreement, under which Claimant agreed to waive entitlement to wage loss benefits or medical benefits after October 4, 2006, in exchange for $40,000. The parties do not suggest that this agreement relates to the issues before this Court.

12. As noted above, Employer's Insurer's initial recovery was reduced by the Employer's Initial Share of Expenses of Recovery. A portion of Employer's Initial Share of Expenses of Recovery was attributable to the period between the filing of the supersedeas and the Third–Party Settlement Agreement. Employer's Insurer is seeking reimbursement for this subset of Employer's Initial Share of Expenses of Recovery, not for the entirety of the Employer's Initial Share of Expenses of Recovery relating to the benefits paid prior to the filing of the November 2005 petitions for modification/suspension and supersedeas.

13. The Certified Record includes portions of Insurer's Payment Ledger, which indicates that following the Third–Party Settlement Agreement Insurer made payments every two weeks to Claimant of $263.40 and to Claimant's counsel of $65.84. When combined, these payments are nearly equivalent to the referenced weekly payments of $164.42, or $164.62. No party has argued that there should be a distinction between the payments made directly to Claimant and those made to Claimant's counsel.

14. Section 443 is entitled "Denial of supersedeas, reimbursement; appeal; workmen's compensation supersedeas fund created; assessments, notice, objections and findings; department's records; evidence; disbursements" and provides in relevant part:

(a) If, in any case in which a supersedeas has been requested and denied under the provisions of section 413 or section 430, payments

Rejecting the Bureau's argument, the WCJ granted Employer's Insurer's application and ordered the reimbursement of $2,016.08 for the Unreimbursed Pre–Settlement Payments for the period November 22, 2005, to February 15, 2006, in addition to $5,590.28, which represented the $164.42 weekly Grace Period Payments to Claimant from February 16, 2006 to October 11, 2006.[15] The total reimbursement ordered was $7,606.36. The Bureau appealed the decision of the WCJ to the Workers' Compensation Appeal Board ("WCAB"), which affirmed after noting the absence of case law on the question presented by this case involving the interaction of supersedeas reimbursement under Section 443(a) and third-party settlement distribution under Section 319.

On the Bureau's appeal to the Commonwealth Court, that court recognized that under Section 443(a) an employer must meet the following five criteria to obtain reimbursement from the Supersedeas Fund: (1) supersedeas was requested; (2) the request for supersedeas was denied; (3) the request was made in a proceeding under Section 413 or 430 of the WCA; (4) payments were continued because of the order denying supersedeas; and (5) in the final outcome of the proceedings, it was determined such compensation was not, in fact, payable. The court noted that the parties did not dispute that Employer's Insurer satisfied the first three factors. Instead, the dispute hinged on the final two factors: whether because of the "order denying supersedeas, [Employer's Insurer] contin-

of compensation are made as a result thereof and upon the final outcome of the proceedings, it is determined that such compensation was not, in fact, payable, the insurer who has made such payments shall be reimbursed therefor. Application for reimbursement shall be made to the department on forms prescribed by the department and furnished by the insurer. Applications may be assigned to a workmen's compensation referee for a hearing and determination of eligibility for reimbursement pursuant to this act. An appeal shall lie in the manner and on the grounds provided in section 423 of this act, from any allowance or disallowance of reimbursement under this section.

77 P.S. § 999(a) (internal footnotes omitted).

15. The WCJ's order included figures that differed slightly from the record. The amounts were corrected by the WCAB to the figures included above. The distinctions are not at issue before this Court.

ued making payments of 'compensation' that were ultimately determined to not, in fact, be payable." *Dept. of Labor and Industry v. WCAB (Excelsior Insurance)*, 987 A.2d 855, 860 (Pa.Cmwlth.2010) (internal footnote omitted).

The court acknowledged that the Bureau argued that the payments made by Employer's Insurer were not payments of "compensation" but were payments made for Employer's Insurer's share, attributable to each week of the grace period, of the costs of recovering the proceeds of the third-party settlement, which it claimed are not reimbursable under Section 319. The Bureau further argued that Employer's Insurer received a benefit from the third-party settlement through the reimbursement of its accrued lien and the benefit of the grace period.

The Commonwealth Court majority rejected the Bureau's argument. As did the WCJ and the WCAB, the Commonwealth Court concluded that Employer's Insurer was entitled to reimbursement from the Supersedeas Fund for the payments made. It noted that Employer's Insurer began paying Claimant $410.00 per week in wage loss benefits, as well as medical benefits, following Claimant's injury in November of 2003. However, the court opined that Employer's Insurer did not receive full reimbursement for that compensation from the third-party settlement because, pursuant to Section 319, Claimant's costs of recovering the third-party settlement were deducted prior to the distribution to Employer's Insurer. Additionally, the court observed that after the third-party settlement, Employer's Insurer paid $164.42 per week, rather than paying Claimant the full $410.00 per week compensation. The court explained in a footnote:

> While the $164.42 per week that [Employer's Insurer] was required to pay Claimant during the grace period was calculated based on [Employer's Insurer's] share of the costs for recovering Claimant's balance of recovery from the Third–Party Settlement, this amount was, in effect, paid to Claimant to ensure that he received his full compensation rate of $410.00 per week during that period.

*Excelsior*, 987 A.2d at 862 n. 12. Further, the court noted that the WCJ's ultimate decision to suspend benefits "effectively render[ed] any compensation payments that [Employer's Insurer] made to Claimant after [August 12, 2005] as not, in fact, payable." *Excelsior*, 987 A.2d at 862. Thus, the court determined that Employer's Insurer had made payments of compensation that were not payable following the denial of supersedeas, such that reimbursement from the Supersedeas Fund was proper.

While recognizing the Bureau's argument that Section 319 requires an insurer to share in the costs of recovering a third-party settlement, the court "discern[ed] no clear indication from Section 319 that an insurer is required, in the context of Supersedeas Fund reimbursement, to assume the costs of recovering a third-party settlement for periods in which there has been a determination that compensation was not, in fact, payable." *Excelsior*, 987 A.2d at 862. The court additionally looked to our decision in *Pergola*, which it viewed as interpreting Section 319's pro rata distribution of the costs of recovery as a means "to properly distribute the cost of the particular benefit being received from the third-party settlement to the appropriate party as the benefits are received," such that the "costs follow the benefits." *Excelsior*, 987 A.2d at 862. The court concluded that the theory "breaks down" when the insurer does not receive a benefit, as in this case. It concluded that rather than Employer's Insurer receiving a benefit from the third-party settlement, the Supersedeas Fund in fact benefited because it did not have to reimburse Employer's Insurer for the full $410.00 weekly compensation that Employer's Insurer would have been paying but for the Third–Party Settlement Agreement. Accordingly, the court concluded that Employer's Insurer should not be responsible for paying the share of the costs of recovering the settlement related to payments for which it was not ultimately deemed by the WCJ to be responsible.

A dissenting judge, however, viewed the payments made as "not 'compensation' in and of themselves, but rather the costs that must be borne by an employer to obtain the ability to not

have to pay compensation." *Excelsior*, 987 A.2d at 865 (Pellegrini, J., dissenting). Additionally, the dissent concluded that the payments were made not as a result of the denial or supersedeas but instead as a result of the reimbursement provisions for third-party settlements.

The Board appealed the decision of the Commonwealth Court to this Court. We granted review to consider the following questions:

> (1) Whether the payments made by Excelsior Insurance to Claimant, for which Excelsior Insurance sought reimbursement from the Supersedeas Fund, constituted payments of compensation within the meaning of Section 443 of the Workers' Compensation Act ("Act"), 77 P.S. § 999(a), and were, therefore, subject to reimbursement by the Supersedeas Fund, or whether such payments constituted the payment of costs associated with obtaining the settlement of Claimant's third-party tort action under Section 319 of the Act, 77 P.S. § 671.

*Department of Labor & Industry v. WCAB (Excelsior Insurance)*, 610 Pa. 331, 19 A.3d 511, 512 (2011).[16]

As it has before the lower tribunals, the Bureau focuses its argument on the last two prerequisites for reimbursement under Section 443, under which an insurer seeking reimbursement from the Supersedeas Fund must prove (1) that the payments were continued because of the denial of supersedeas and (2) that it was ultimately determined that the compensation was not, in fact, payable. Turning first to the question of whether the compensation was payable, the Bureau contends that Employer's Insurer in the case at bar is seeking reimbursement for its pro rata share of the attorney fees and costs in claimant's recovery from the third-party tortfeasor, which the Bureau asserts is not "compensation" for purposes of reimbursement under Section 443. Citing *Universal AM–*

16. In that we determine that the contested amounts are reimbursable pursuant to the statutory language of Sections 319 and 443, we need not address the Bureau's second issue questioning "Whether equity requires that the Supersedeas Fund reimburse the insurer's *pro rata* share of attorney fees and costs incurred by a claimant in recovering from a third-party tort feasor?" *Id.*

*CAN, Ltd. v. WCAB (Minteer)*, 870 A.2d 961 (Pa.Cmwlth. 2005), the Bureau contends that it is well-settled that attorney fees and costs are not compensation under Section 443.[17] Brief of Bureau at 10.

It argues that "the payments here ensured that [Employer's Insurer] paid for the benefit that it received from the third-party settlement, as required by section 319 of the Act." *Id.* at 10–11. It contends that, during a grace period, an insurer/employer is allowed to suspend its compensation payments and instead only pays the pro rata share of the attorney fees and costs that resulted in the third-party settlement, such that these payments are not compensation. It cites language in our decision in *Pergola*, that the Bureau maintains supports its argument: "[T]he grace period is that number of weeks in the future for which the employer does not have to pay claimant's workers' compensation benefits." *Id.* at 19 (quoting *Pergola*, 701 A.2d at 563) (emphasis omitted). The Bureau rejects the Commonwealth Court's statement in footnote 12 where the court asserted that the Employer's Insurer's payments during the grace period were to ensure that Claimant received his full compensation rate of $410.00 per week. The Bureau argues that this statement is wrong because during the grace period Claimant was not owed any additional compensation from the Employer's Insurer because Claimant had received the $189,301.52 Balance of Recovery which constituted all the compensation Claimant was due during the 461.7 weeks of the grace period. Instead, the Bureau reasserts that the payments made during the grace period were merely for the pro rata share of the attorney fees and costs associated with the benefit of not having to pay compensation during the grace period.

17. Although not necessary to our discussion herein, we note that the Bureau's citation to *Universal AM–CAN, Ltd. v. WCAB (Minteer)* is strained. The Commonwealth Court in that case decided that an insurer's own attorney fees and costs in its litigation against the claimant were not reimbursable as compensation to the claimant under Section 443. The court, however, did not speak to the question before this Court regarding the distribution of the costs of litigation against a third-party tortfeasor under Section 319.

Alternatively, the Bureau contends that even if we determine that the contested payments constitute compensation for purposes of Section 443, the payments nonetheless were not made as a result of the denial of supersedeas as required for reimbursement under Section 443. It contends that "[r]egardless of the supersedeas request, [Employer's Insurer] would still have been required to reimburse Claimant for the costs of the third-party recovery, either in a lump sum or on a week to week basis." Brief of Bureau at 14–15. Therefore, the Bureau contends that the payments were a result of the third-party settlement instead of the denial of supersedeas. The Bureau, however, fails to respond to the fact that had supersedeas been granted when first sought in November 2005, Employer's Insurer would not have been making any payments after that date at the $410.00 Weekly Compensation Rate between November 2005 and February 2006, nor at the $164.42 rate during the grace period. Moreover, the Bureau does not acknowledge that, at the time of the Third–Party Settlement Agreement, Employer's Insurer compensated Claimant for the pro rata share of the attorney fees attributable to the pre-third-party settlement compensation payments it recouped as a result of the settlement, including compensation payments made both before and after the denial of supersedeas.

Employer's Insurer highlights this lapse in the Bureau's argument and instead maintains that the language of Section 443 and Section 319, as well as the policies behind the sections, support the reimbursement of Employer's Insurer for the compensation payments it made. Looking to the specific payments, Employer's Insurer first considers the amount Employer's Insurer paid in compensation to Claimant after the denial of supersedeas and before the third-party settlement. Employer's Insurer asserts that there is no question that, at the time of payments, the payments were compensation paid as a result of the denial of supersedeas. Thus, absent the third-party settlement, these payments would have been reimbursable in full from the Fund upon the ultimate grant of supersedeas. Employer's Insurer notes that a portion of these payments was satisfied through the third-party

settlement, but Employer's Insurer was not reimbursed for the amount equal to the pro rata share of the costs of recovery that was allotted to Claimant from the Third–Party Settlement Agreement. Employer's Insurer argues that these unreimbursed amounts that were originally paid as compensation are "not converted into attorney fees and costs simply because there was a third-party settlement." Brief of Employer's Insurer at 15. It notes that the fact that Employer's Insurer may have recouped through the Third–Party Settlement Agreement the compensation it paid prior to the denial of supersedeas (which it concedes is not subject to reimbursement) is irrelevant to whether it has been fully reimbursed for the compensation it paid following the denial of supersedeas.

Employer's Insurer also maintains that the Grace Period Payments constitute compensation under Section 443. Employer's Insurer's amicus, the Pennsylvania Defense Institute (PDI), further elaborates upon Employer's Insurer's argument that the payments made during the grace period should be reimbursed as compensation. PDI contends that the grace period payments are made to the claimant during each week when the insurer asserts a credit against its Workers' Compensation liability for the portion of the third-party settlement, which is considered an advance payment of compensation. PDI argues that the gross method set forth in *Pergola* "looks to the pro rata share of attorney fees and litigation expense to calculate the amount of compensation payable to claimant during each week when the insurer is entitled to recoup the advance payments of compensation, which were made as a result of the actions of the third-party tort feasor." Brief of PDI at 13. It further notes that if supersedeas had not been improperly denied, Employer's Insurer would not have made any payments during the grace period, and thus these payments, just like any other compensation payments made following an improper denial of supersedeas, should be reimbursed to the insurer from the Supersedeas Fund.

Employer's Insurer additionally notes that this Court in *Pergola* observed that "Section 319 requires that the Employer only needs to reimburse the Employee for legal expenses as

the Employer received the benefit of the recovery of the settlement." Brief of Employer's Insurer at 15 (quoting *Pergola*, 701 A.2d at 565). It argues that "[i]n this case, [Employer's Insurer] did not receive the benefit of the third-party settlement as to the compensation it paid between the date that supersedeas was denied, and the date the prior WCJ suspended Claimant's benefit." *Id.* Instead, Employer's Insurer contends that the Fund benefited from the third-party settlement because it did not have to pay the Employer's Insurer for the full amount of the compensation that Employer's Insurer paid prior to the settlement or for the full $410 weekly compensation that Employer's Insurer would have been paying but for the third-party settlement. Employer's Insurer contends that it should receive reimbursement for the amounts it paid that had not been previously reimbursed and for the amounts it paid during the grace period because reimbursement is supported by the language of Sections 319 and 443 and there is no language in those sections to the contrary. Accordingly, Employer's Insurer calls on the Court to affirm the decisions below.

■ "In reviewing an agency decision, our standard of review is restricted to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence." *Department of Labor & Industry, Bureau of Workers' Compensation v. WCAB (Crawford & Co.)*, 611 Pa. 10, 23 A.3d 511, 514 (2011); *see also* 2 Pa.C.S. § 704. As the issues before this Court involve the interaction of two provisions of the Workers' Compensation Act, our standard of review is *de novo,* and our scope of review is plenary. *See id.*

As this case requires consideration of Sections 319 and 443 of the WCA, we are guided by the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). We must construe a statute to give effect to all of its provisions. *Id.* Moreover, statutes, or parts of statutes, must be read *in pari*

*materia* when they relate to the same class of persons or things. 1 Pa.C.S. § 1932.

The Workers' Compensation Act balances the competing interests of employers and employees. *See Thompson v. WCAB (USF & G Co.)*, 566 Pa. 420, 781 A.2d 1146, 1153 (2001). As discussed in detail below, Section 319, providing an employer the right to subrogation in regard to an employee's recovery from a third-party tortfeasor, and Section 443, providing reimbursement to an employer denied supersedeas, exemplify the balancing act of the WCA. In short, in exchange for requiring employers to compensate injured employees regardless of fault, the WCA protects employers from tort litigation by the injured employee and, under Section 319, provides the employer "the absolute right of subrogation." *Id.* Similarly, while the WCA requires employers to compensate injured employees even while contesting its responsibility for the injury under the WCA, Section 443 provides reimbursement from the Supersedeas Fund for such payments made if it is later determined that the employer was not responsible. We have concluded that "an employer who complies with its responsibilities under the Workers' Compensation Act should not be deprived of one of the corresponding statutory benefits based upon a court's *ad hoc* evaluation of other perceived 'equities.' " *Id.*

Turning first to Section 443, the WCA provides for the reimbursement of compensation paid by an insurer to a claimant following the denial of supersedeas if five criteria are met. As noted, all parties agree that Employer's Insurer met the first three criteria: (1) supersedeas was requested; (2) the request for supersedeas was denied; and (3) the supersedeas request was made pursuant to Section 413(a.2) in connection with its November 22, 2005, petition to modify benefits. *See* Petition to Modify Compensation Benefits, Reproduced Record ("R.R.") at 3a–5a; Supersedeas Order of Jan. 17, 2006, R.R. at 6a–8a. The case instead turns on whether: (4) payments were continued because of the order denying supersedeas and (5) it was eventually determined such compensa-

tion was not, in fact, payable. We address these two prongs in turn.

We recently addressed Section 443 in *Crawford & Company*. In *Crawford & Company*, we considered whether "the Supersedeas Fund may deny reimbursement of medical treatment rendered before an insurer requested supersedeas, where the Workers' Compensation Act only permits reimbursement of amounts paid as a result of a denial of supersedeas." *Crawford & Company*, 23 A.3d at 513–14. In that case, the insurer sought supersedeas after the relevant surgery took place but prior to receiving or paying the medical bill for the surgery. In deciding the case, we addressed the tenets of Section 443 that are equally applicable to the case at bar:

> The insurer challenged its obligation via the supersedeas-when that was denied, the insurer lost the right to delay payment until the issue of responsibility was resolved. The insurer continued meeting its responsibility until the WCJ found [the claimant] was not suffering from a work-related injury at the time of the surgery. Had supersedeas been granted, payment would not have been made, but supersedeas was not granted and payment necessarily followed. It is the bill, post-denial, that caused money to leave the coffers of the insurer. Ergo, payment resulted from the denial.

*Id.* at 515–16. Substituting the facts of this case, Employer's Insurer sought and was denied supersedeas. Following the denial, it had no choice but to continue to make payments to Claimant. Had supersedeas been granted when requested in November 2005, Employer's Insurer would not have made the $410.00 weekly payments between November 2005 and February 2006, a portion of which constituted the Unreimbursed Pre–Settlement Payments, or the $164.42 weekly Grace Period Payments from February 2006 to October 2006. Ergo, we conclude that both the Unreimbursed Pre–Settlement Payments and the Grace Period Payments were made a result of a denial of supersedeas for purposes of Section 443.

The other requirement of Section 443 contested by the Bureau, whether the payments made by Employer's Insurer were "compensation" ultimately determined to be not payable, implicates Section 319. As discussed, Section 319 provides employers with the right to subrogation against the employee's recovery from a third-party tortfeasor and also directs the proration of the employee's costs of such recovery. The Bureau argues that the contested payments constitute payment of the costs of recovery as required by Section 319, rather than reimbursable "compensation" for purposes of Section 443.

In considering Section 319, we observe that this Court has identified three purposes for Section 319's right to subrogation: "(1) to prevent the employee from receiving a 'double recovery' for the same injury; (2) to ensure that the employer is not compelled to pay compensation due to the wrongful act of a third party; and (3) to prevent a third party from escaping liability for its wrongful conduct." *Brubacher Excavating, Inc. v. WCAB (Bridges)*, 575 Pa. 168, 835 A.2d 1273, 1277 (2003). The purpose applicable in this case is to ensure that Employer's Insurer is not compelled to pay compensation to Claimant who was injured as a result of the third-party tortfeasor's actions.

We have not minced words regarding the significance of the employer's right to subrogation. Noting that the section clearly and unambiguously provides that the employer "shall be subrogated," 77 P.S. § 671, to the employee's right of recovery, we have held that the statutory right of subrogation is "absolute and can be abrogated only by choice." *Bridges*, 835 A.2d at 1275–76 (ultimately holding, however, that subrogation is only permitted when the third party causes the "compensable injury," which had not occurred in that case). "[T]he importance and strength of subrogation in our system of workers' compensation cannot be understated." *Id.* We have stated the Section 319 right of subrogation "is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. Furthermore, it does more than confer a 'right' of subrogation upon the employer;

rather, subrogation is automatic." *USF & G Co.,* 781 A.2d at 1151.

As noted by the quotations above, much of our caselaw addressing Section 319 has focused upon the right of subrogation rather than the provisions relevant to the case at bar relating to the allocation of an employee's excess recovery and the reimbursement of the employee's costs of recovering a settlement. In *Pergola,* 701 A.2d 560, however, we focused on these two interrelated provisions. First, we recognized that the language treating the excess recovery as advance payment of future installments of compensation creates a "grace period" during which time insurer does not have to pay the full amount of compensation. 77 P.S. § 671 ("Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be ... treated as an advance payment by the employer on account of any future instal[l]ments of compensation."). Viewing this provision *in pari materia* with the language prorating the employee's costs of recovery, we adopted the gross method for calculating an employer's subrogation rights and liabilities and held that the employer need only reimburse the employee weekly for the amount of legal costs attributable to each week of the grace period, rather than using the net method of calculation which would require the employer to pay the costs of recovery in full at the beginning of the grace period.[18] *Id.* ("[R]easonable attorney's fees ... shall be prorated between the employer and employe[e]").

■ Before addressing the heart of the Bureau's argument relating to the Grace Period Payments, we must consider the Unreimbursed Pre–Settlement Payments involving the portions of the $410.00 weekly compensation benefit payments made between November 2005 and February 2006 that were not reimbursed as a result of the payment of Employer's Initial Share of Expenses of Recovery as required by Section 319 and *Pergola.* There is no dispute that at the time these payments were made they were compensation. Moreover,

18. Note 3, *supra,* provides a description of the calculation of the gross method.

had there not been a Third–Party Settlement Agreement, the Supersedeas Fund would have been required to reimburse Employer's Insurer for the full $410.00 weekly payments following the WCJ's decision to grant supersedeas. As a result of the Third–Party Settlement Agreement, Employer's Insurer has already been reimbursed a portion of these $410.00 weekly compensation payments from the third-party settlement. We find no language in either Section 443 or Section 319 that would transform the unreimbursed portion of these weekly compensation benefit payments into something other than compensation merely because that portion was deducted in order to compensate the Claimant for the costs of recovering the Third–Party Settlement Agreement. Accordingly, we conclude that the Unreimbursed Pre–Settlement Payments constitute compensation later determined not to have been payable for purposes of reimbursement from the Supersedeas Fund under Section 443.

■ We next consider the $164.42 weekly Grace Period Payments made following the Third–Party Settlement Agreement in February 2006 through October 2006. The Bureau relies upon the following statement in *Pergola* to demonstrate that this Court has viewed payments made during a grace period as other than compensation: "The grace period is the number of weeks in the future for which the employer does not have to pay claimant workers' compensation benefits." *Pergola*, 701 A.2d at 563. In contrast to the implication of the Bureau, this Court was not considering whether the payments made during the grace period were or were not "compensation" for purposes of supersedeas under the fifth prong of Section 443, but instead was merely explaining the concept of a grace period. The issue before the Court in *Pergola* was how to calculate the grace period and whether to use the gross or net method. This Court made no conclusion regarding the categorization of any payments that would be made during the grace period.

In contrast to the Bureau's attempt to read *Pergola* to categorize the payments made as "not compensation," the language of Section 319 is consistent with viewing the Grace

Period Payments as compensation. Indeed, it instructs that "[a]ny recovery against such third person in excess of the compensation theretofore paid by the employer ... shall be treated as an advance payment by the employer on account of any future instal[l]ments of compensation." 77 P.S. § 671. Given that the statute credits the employer with paying future weekly installments of compensation via the excess recovery, we conclude that the weekly amount actually paid by the employer during the grace period may also be considered reimbursable "compensation" for purposes of Section 443. Such a conclusion complies with Section 443's intent to ensure that the employer is reimbursed for payments later determined not to be the employer's responsibility and Section 319's absolute right to subrogation when the responsibility for the injury lies at the feet of a third-party tortfeasor rather than the employer.

Moreover, in *Pergola*, we stated, "Since the legal expenses and future credits portion of Section 319 must be read *in pari materia*, we conclude that Section 319 requires that the employer only needs to reimburse the employee for legal expenses as the employer receives the benefit of the recovery or settlement." *Pergola*, 701 A.2d at 565. Therefore, if the employer only needs to reimburse the employee for the legal expenses as the employer receives the benefit, it does not make sense that the employer is responsible for the legal expenses attributable to the benefit of not having to pay the compensation during the grace period, if it is later determined that the employer was not, in fact, responsible for paying any compensation during the grace period. Moreover, we find no language in Section 443 that would require us to conclude that payments by the employer/insurer during the grace period of Section 319 are not compensation for purposes of reimbursement from the Supersedeas Fund merely because they are calculated based upon the proration of the costs of the third-party recovery.

In summary, Employer's Insurer properly paid Claimant his $410.00 weekly benefits initially and then the reduced $164.42 payments during the grace period, despite the protest it

lodged via its modification/suspension petition and its petition for supersedeas. The fact that the amount of the Unreimbursed Pre–Settlement Payments and the Grace Period Payments were calculated based upon the funds expended by the Claimant to recover from the third-party tortfeasor does not detract from the fact that Employer's Insurer paid these funds as compensation to the Claimant to satisfy Employer's Insurer's obligation to Claimant pending the decision of the WCJ on its petition for modification/suspension. In line with Section 319 and 443, Employer's Insurer should be reimbursed for the full amount of compensation it paid as a result of the denial of supersedeas relief.

Accordingly, we agree with the decision of the tribunals below, and affirm the decision of the Commonwealth Court.

Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR, TODD and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice EAKIN, dissenting.

I disagree with the majority's conclusion that the Unreimbursed Pre–Settlement Payments and the Grace Period Payments paid to Claimant constituted reimbursable compensation within the meaning of § 443 of the Workers' Compensation Act, 77 P.S. § 999(a).

One of the criteria for reimbursement from the Supersedeas Fund under § 443(a) is that the payments were continued because of the order denying supersedeas. Here, regardless of the supersedeas request, Employer's Insurer was still required to reimburse Claimant for the costs incurred in obtaining the third-party settlement; therefore, the payments were reimbursement for legal fees and costs, and the denial of supersedeas had nothing to do with continuation of the pay-

ments. Further, as the dissent from the Commonwealth Court's decision observed:

Reimbursement is only authorized for compensation paid as a result of denial of a supersedeas *under Sections 413 and 430 of the Act.* Both of those provisions involve the obligation of an employer to pay benefits when an employer is attempting to modify benefits or a claimant is awarded benefits.

*Dept. of Labor and Industry v. WCAB (Excelsior Insurance),* 987 A.2d 855, 865 (Pa.Cmwlth.2010) (Pellegrini, J., dissenting) (emphasis added). Section 443 clearly states for reimbursement to occur, there must have been a denial of supersedeas under §§ 413 and 430. Section 413 deals with treating a petition to terminate, modify, or suspend benefits as an automatic request for supersedeas when the petition alleges the claimant has fully recovered; § 430 provides the filing of an appeal from an adverse decision of the WCJ does not operate as a request for supersedeas—a separate petition must be filed. These situations encompass an employer's attempt to modify benefits already being paid or to challenge the award of benefits; they do not deal with the situation here, where the employer (or its insurer) is recouping its lien from a third-party settlement under § 319.

Another criterion for reimbursement is the ultimate determination the *compensation* was not payable. Here, the disputed amount was, as the Commonwealth Court dissent noted, "costs that must be borne by an employer to obtain the ability to not have to pay compensation." *Id.*

Accordingly, I would hold the payments for which Employer's Insurer sought supersedeas reimbursement were not compensation and thus not reimbursable, and would reverse the Commonwealth Court's decision.

Chief Justice CASTILLE joins the dissenting opinion.